**In re Charles A. RICKS, Debtor.**

**ITT FINANCIAL SERVICES, Appellant,**

v.

**Charles A. RICKS, Debtor, David L. Buchbinder, Trustee, Appellees.**

**BAP No. SC 86–1845 MoVAs.**

**Bankruptcy No. 85–01737 LM7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 17, 1988.

Decided Aug. 9, 1988.

---

Jerry Michael Suppa, Law Office of Jerry Michael Suppa, San Diego, Cal., for appellant.

No appearance for appellees.

Before MOOREMAN, VOLINN and ASHLAND, Bankruptcy Judges.

## OPINION

MOOREMAN, Bankruptcy Judge:

This appeal arises from the bankruptcy court's order reopening the debtor/appellee's Chapter 7 case and allowing the avoidance of appellant's lien pursuant to 11 U.S. C. § 522(f).[1]

## FACTS

The debtor filed a Chapter 7 petition on April 16, 1985, and indicated in his schedules that he had no secured consumer debts. The debtor, however, had previously entered into a promissory note and security agreement with the appellant in 1983.[2] The appellant had filed its UCC–1 Financing Statement, claiming a secured interest in all household goods of the debtor. Additionally, two months prior to filing his Chapter 7 petition, the debtor had renewed the original loan and again signed a Security Agreement giving the appellant a secured interest in his household goods.

In June 1985, the appellant contacted the debtor's attorney and stated that it had not received "notice" of the debtor's bankruptcy, whereupon the debtor's attorney provided the appellant with the filing date and the case number. The debtor's schedules claimed the following household goods as exempt: a couch, a coffee table, three end tables, a bookcase, fifteen pictures, a bed, a dresser, several chairs, a table, a stereo, a television and a vacuum cleaner. The appellant made no objection to the discharge which was entered on August 19, 1985.

In a letter to the debtor's attorney dated October 21, 1985, the appellant stated that it intended to recover the secured household goods because "no lien avoidance had been filed." On October 30, 1985, the debtor's attorney requested a copy of the note,

---

1. 11 U.S.C. § 522(f) provides in the pertinent part:
   (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
   (2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; ....

2. At the time of this transaction. the appellant, ITT Financial Services, was known as AFTNA Finance Company.

security agreement, and financing statement, which was forwarded to the debtor on November 4, 1985.

On November 18, 1985, the appellant filed in state court a Complaint for Possession of Personal Property, and on December 10, 1985, the debtor filed his answer which included a *Notice of Intention to Avoid the Lien as per Section 522(f)*. On January 7, 1986, the debtor filed in the bankruptcy court, a Motion to Avoid the Lien, however, because the debtor's bankruptcy had been closed (as of November 5, 1985), the debtor had to refile a new motion to avoid the lien combined with a Motion to Reopen the Case.

After the appellant filed an opposition to the motion and a hearing on the matter was held, the bankruptcy court entered a Memorandum decision allowing the debtor to reopen the case and avoided the appellant's lien. That decision was published at *In re Ricks*, 62 B.R. 681 (Bankr.S.D.Cal. 1986). The appellant filed a timely notice of appeal.

## DISCUSSION

It is recognized that a trial court's reopening of a closed case pursuant to 11 U.S.C. § 350, to avoid a lien under § 522(f), is reviewed for an abuse of discretion. *Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 326–27 (4th Cir.1984). *See also In re Daniels*, 34 B.R. 782 (9th Cir. BAP 1983).

A previous Bankruptcy Appellate Panel has recognized that "in the absence of prejudice to creditors ... neither the entry of discharge nor the closing of the case [will bar] lien avoidance actions under 11 U.S.C. § 522(f)(2)." *In re Yazzie*, 24 B.R. 576, 577 (9th Cir.Bankr.1982) (the BAP adopted the above concept as the "majority rule") (citations omitted). *See also In re Hawkins*, 727 F.2d 324; *In re Smart*, 13 B.R. 838 (Bankr.D.Ariz.1981); *In re Quackenbos*, 71 B.R. 693 (Bankr.E.D.Pa.1987); *In re Cos-*

*tello*, 72 B.R. 841 (Bankr.E.D.N.Y.1987).[3] As recognized by the *Quackenbos* court, the above rule has been based on several rationale including:

(1) the absence of any deadline in the Code or the Bankruptcy Rules for initiating a lien avoidance proceeding under section 522(f), especially when contrasted with 11 U.S.C. §§ 546(a), 549(d); (2) the text of 11 U.S.C. § 350 which states that a case may be reopened to accord relief to the debtor; (3) legislative history which refers to reopening cases for lien avoidance subject to the bar of laches; (4) the fresh start policy of the Code which encourages the full application of the Code's exemption provisions; and (5) the interpretation of the right to avoid liens under section 522(f) as a "personal" right of the debtor which exists independent of case administration.

*In re Quackenbos*, 71 B.R. at 695 (citations omitted).

██ Initially the appellant argues that the debtor had constructive and actual notice of the existence of the lien and that therefore Judge Malugen was incorrect by stating in her opinion, "the primary reason [the debtor] did not avoid [the appellant's] alleged lien during the pendency of his case is because he did not know the lien existed." *In re Ricks*, 62 B.R. at 683. Although, it appears from the record that the debtor should have known about the lien or at least had "constructive notice" of the claim of an existing lien, this factor alone is not determinative of whether the lien may be properly avoided. In almost every case a debtor is going to have constructive notice that a claim of lien on § 522(f) property exists. The problem arises, however, when a debtor through his own mistake or the mistake of his attorney fails to avoid that lien during the pendency of the bankruptcy proceedings.

██ The key factor in allowing the late avoidance of a lien pursuant to § 522(f) is

---

3. The clear majority of cases recognize that a previously closed bankruptcy case may be reopened pursuant to 11 U.S.C. § 350(b) in order to avoid a lien under § 522(f). Section 350(b) provides:

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

whether the creditor is sufficiently *prejudiced* so that it would be *inequitable* to allow avoidance of the lien. The appellant argues that it has been prejudiced by the debtor's failure to avoid the lien because it had, subsequent to the discharge, brought a state court action to recover the "secured property." Whether a creditor's subsequent action to enforce a lien constitutes sufficient prejudice so as to prevent the avoidance of the lien is unclear.

While few courts have specifically addressed this issue, some courts have determined that the creditor's independent action to execute on the lien may be sufficient prejudice to *bar* avoidance of the lien. *See, e.g. In re Hawkins*, 727 F.2d at 327. Other courts have allowed the reopening of the case and avoidance of the lien, *subject to* the debtor reimbursing the creditor for "any extra costs attributable to [the] delay." *E.g. Noble v. Yingling*, 37 B.R. 647, 651 (D.Del.1984). In the instant case, however, the bankruptcy court determined that the appellant could not "reasonably explain its action of pursuing this debtor in state court on an obviously worthless and avoidable lien," apparently also taking into consideration the ordinary nature of the household goods involved. *In re Ricks*, 62 B.R. at 684. Accordingly, the lower court held that the appellant did not detrimentally rely on the debtor's inaction.

The appellant argues that at the very least it should be entitled to attorney's fees and costs incurred in bringing the state court action. In support of its position, the appellant cites the cases of *Hassler v. Assimos*, 53 B.R. 453 (D.Del.1985), and *Noble v. Yingling*, 29 B.R. 998 (D.Del.1983), where certain factors were identified for purposes of addressing the issue of prejudice to a *judgment creditor whose judgment lien is* sought to be avoided pursuant to § 522(f)(1). Those factors are equally applicable to § 522(f)(2) considerations and are set forth as follows:

1) vigor with which the . . . creditor pursued the debtor prior to the filing of the bankruptcy petition, 2) communication of positions by and between debtor and . . . creditor after filing of the petition and prior to discharge, 3) motivating cause of failure to file lien avoidance complaint

prior to discharge, 4) length of time between discharge and filing of lien avoidance complaint, 5) reasons for delay in filing lien avoidance complaint, 6) prejudice to the . . . creditor, and 7) good faith, or lack thereof, of the creditor.

*Noble*, 29 B.R. at 1003.

As to the first factor, there is no indication from the record before this Panel that the appellant made any attempts to pursue the debt prior to the filing of the bankruptcy petition.

As to the second factor, it is undisputed that the appellant contacted the debtor's attorney in June 1985 and prior to discharge, to obtain information on the debtor's bankruptcy filing. However, there is no indication that the appellant notified the debtor's attorney at that time or at any subsequent time as to the appellant's lien on the debtor's household goods. As the trial court stated, "Aetna made no attempt to clarify the character of its debt until after the debtor was discharged." *In re Ricks*, 62 B.R. at 683. Although the appellant argues that no such duty exists, if the appellant would have communicated the character of its claim, then the argument that the failure to avoid the lien was due to excusable neglect would be less persuasive.

As to the third factor, the trial court stated that the debtor did not know of the existence of the lien. This is evidenced by the fact that the debtor's schedules did not list any secured creditors and it is undisputed that the instant lien was clearly avoidable under § 522(f). Further, the bankruptcy judge is in the best position to determine whether the debtor understood the nature of the secured interest and whether the debtor's failure to file the lien avoidance is excusable under the circumstances of each case.

The fourth factor is the length of time between the discharge and the filing of the lien avoidance complaint. This factor is also relevant to the issues of inexcusability on the part of the debtor and detrimental reliance on the part of the creditor. In the instant case, the order discharging the debtor was entered on August 19, 1985. The actual lien avoidance complaint was filed approximately five months later on

January 30, 1986, however, the debtor had filed a notice of intent to avoid the lien on December 10, 1985, less than four months after discharge.

As for the fifth factor or "reasons of the delay," it is undisputed that the debtor did not receive from the appellant the essential information requested with regard to the security agreement until after November 4, 1985. Also, the debtor stated at the hearing and in his brief that the appellant "refused to provide [the debtor] with the security listing requested on October 30, 1985." Appellee's Brief at 1. The debtor states in his brief that the appellant is "fully aware that [the Bankruptcy Court for the Southern District of California] will not grant a lien avoidance without a detailed statement of the security and values." *Id.* These facts are not disputed by the appellant and they support the trial court's determination that no undue delay existed.

With regard to the sixth factor, it is undisputed that the appellant incurred attorney's fees in filing the state court action to recover the property.[4] However, an actual finding of detrimental reliance also includes the seventh and perhaps most important factor of good faith or *reasonableness of the creditor's reliance.* In the instant case, the appellant was given notice of the bankruptcy at least as early as June 4, 1985, two months before the discharge was entered. As the trial court pointed out, "[the appellant] made no attempt to clarify the character of its debt until after the debtor was discharged." *In re Ricks,* 62 B.R. at 683. Additionally, it is undisputed that the lien at issue was clearly avoidable as exempt property under § 522(f). As set forth by the trial court:

> Such a creditor knows what types of property can be claimed as exempt under the local law. He knows the nature of his lien and the property upon which it is impressed. With this information he knows whether or not the lien is avoidable by the debtor under Section 522(f).

These facts will not and do not change with time and delay.

*Id.* at 684 (quoting *Matter of Swanson,* 13 B.R. 851, 855 (Bankr.D.Idaho 1981)).

█ Although the appellant is likely correct in arguing that it had no *duty* to speak up about the debtor's mistake in scheduling the appellant's debt as unsecured, in order to claim attorney's fees, a creditor is required to exercise good faith and reasonable reliance on the debtor's failure to avoid the lien. It also follows that a creditor should not be allowed to sit back hoping a debtor will not discover a mistake in scheduling an obviously avoidable lien and then seek to claim the defense of detrimental reliance after incurring attorney's fees to obtain the exempt property.

### CONCLUSION

Under the circumstances of the instant case, the trial court did not abuse its discretion in holding that the appellant did not reasonably rely to its detriment on the debtor's inaction.

Accordingly, the decision of the bankruptcy court is AFFIRMED.

---

**4.** The Appendix to the Appellant's Brief includes a Declaration of Attorney's Fees and Costs which was filed with the trial court prior to the hearing to avoid the lien. E.R. at 31–32. It sets the amount of fees incurred at $762.00. How-

ever, there is a question as to which fees were incurred in seeking to recover the collateral (i.e. the demand letter and state court complaint), and which fees were merely a part of defending against the lien avoidance action.