**In re Sandor CHABOT;**

**In re Betty B. Chabot, Debtors.**

**CITY NATIONAL BANK,
Plaintiff–Appellee,**

v.

**Sandor CHABOT; Betty B. Chabot,
Defendants–Appellants.**

**No. 91–56171.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1993.

Decided April 16, 1993.

**892**

Bruce G. Landau, Rosky, Landau & Fox, Beverly Hills, CA, for defendants-appellants.

Tobin A. Mills, Office of the Gen. Counsel, Beverly Hills, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, SNEED and HALL, Circuit Judges.

SNEED, Circuit Judge:

The debtors in this bankruptcy appeal challenge the district court's holding that a junior judicial lien did not impair their homestead exemption and therefore could not be avoided under 11 U.S.C. § 522(f). 131 B.R. 720. We affirm the district court and deny avoidance.

I.

FACTS AND PRIOR PROCEEDINGS

This case involves a dispute over a judicial lien on the Chabots' residence held by the appellees, City National Bank (CNB). On September 30, 1983, the Chabots guaranteed a demand note in favor of CNB for $165,277. CNB instituted an action to collect on September 23, 1984. On March 19, 1986, CNB obtained a summary judgment against the Chabots for $212,115.87 and recorded the abstract of judgment on April 18, 1986. CNB's lien had an outstanding balance of $241,579.08 at the time of the filing of the bankruptcy petition.

Two prior deeds of trust on the appellants' residence and the homestead exemption, both of which have priority over CNB's lien, are undisputed. The first deed was recorded in 1977 and had a balance of $86,412.42 at the time of the filing of the bankruptcy petition. The second deed was recorded in 1984 and had a balance of $38,540.88. The homestead exemption is set at $45,000.

The Chabots allegedly borrowed $173,000 between 1979 and 1983 from Gayfry de Panama (GDP), a Panamanian corporation owned by the Chabots' cousin. A promissory note was executed for this amount on October 14, 1983, but there is no evidence of any loans. The deed of trust to secure this note was not executed until July 19, 1984, and was not recorded until October 16, 1984. If this deed was valid and not subordinated, it would have priority over CNB's lien.

On August 7, 1987, the Chabots voluntarily filed a Chapter 7 petition for bankruptcy. They claimed homestead property as exempt, listed GDP as a secured creditor, and listed CNB as unsecured. The house was valued at $400,000, but it was never liquidated. CNB apparently made some requests for information concerning the GDP deed of trust, but otherwise took no action during the bankruptcy proceedings. On December 7, 1987, the Chabots received their discharge, and the case was closed on January 7, 1988.

Despite the failure to act during the 1987 bankruptcy proceedings, on September 22, 1988, CNB filed a complaint in state court to set aside the GDP deed of trust as a fraudulent transfer. On November 4, 1988, the Chabots returned to the bankruptcy court and moved it to reopen their case and remove the CNB inspired state court action to the bankruptcy forum. On December 16, 1988, CNB responded by filing a motion for abstention and remand. On January 10, 1989, the court granted the motion to reopen and continued the motion to abstain and remand. On January 13, 1989, the Chabots then filed a motion to avoid CNB's lien pursuant to 11 U.S.C. § 522(f). In this manner the validity and survival of the CNB lien was put at issue.

On May 3, 1989, the bankruptcy court denied the Chabots' motion to avoid the lien and granted CNB's motion to abstain and remand; the Chabots appealed to the district

court. On May 19, 1991, GDP subordinated its deed completely to CNB in settlement of the state court action. On August 23, 1991, the district court affirmed the bankruptcy court's decision to deny avoidance.

The CNB lien prevailed after seven years of resistance by the Chabots. We now must review that determination.

## II.

## JURISDICTION AND STANDARDS OF REVIEW

■ The district court had jurisdiction pursuant to 28 U.S.C. § 158(a). This court has jurisdiction based on 28 U.S.C. § 158(d). We review a trial court's decision to reopen a bankruptcy case to allow lien avoidance pursuant to 11 U.S.C. § 522(f) for abuse of discretion. *In re Ricks*, 89 B.R. 73, 75 (Bankr.9th Cir.1988). We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Professional Inv. Properties of Am.*, 955 F.2d 623, 626 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992).

## III.

## DISCUSSION

A. *Issues Presented on Appeal*

The overarching question in this case is whether the Chabots' $45,000 homestead exemption, which will not be reduced by CNB's partially unsecured lien, should be considered "impaired" under 11 U.S.C. § 522(f). To reach this issue, this panel must first determine whether the bankruptcy case should have been reopened. If the bankruptcy and district courts were correct to hear the case, then we must determine whether, under California law, CNB's lien

attached to the Chabots' residence. If there is a valid, attached lien, then this court must determine whether it impairs the exemption and therefore must be avoided under section 522(f).

B. *Was It an Error to Reopen the Bankruptcy?*

■ CNB complains that the case should not have been reopened. A refusal would have cut off the Chabots' attack. The decision to reopen a bankruptcy case to decide a lien avoidance issue is reviewed for abuse of discretion. *In re Ricks*, 89 B.R. at 75. Absent a prejudicial delay, an avoidance action may be brought at any time. *In re Yazzie*, 24 B.R. 576, 577–78 (Bankr.9th Cir.1982). Both the bankruptcy court and the district court decided the case on the merits, and therefore, implicitly found no prejudice to CNB. CNB basically argues that the Chabots waited too long to bring the avoidance action. This is not sufficient to show prejudice,[1] and it was not an abuse of discretion to hear this case.

C. *Did CNB's Lien Attach to the Chabots' Residence under California Law?*

■ The Chabots claim CNB's lien never attached to their residence and was discharged as a personal liability. Pursuant to California Code of Civil Procedure section 704.950, a judgment lien will generally not attach to a declared homestead recorded prior to the recordation of the abstract of judgment. Subsection (c) of section 704.950, however, provides that,

A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following:

(1) All liens and encumbrances on the declared homestead at the time the abstract

---

1. *In re Ricks* listed seven factors that help in deciding whether a creditor has been prejudiced. They are: 1) the vigor with which a creditor pursued the debtor prior to the filing of the petition, 2) communication of positions between the debtor and creditor after the filing and before the discharge, 3) motivating cause of failure to file the lien avoidance complaint prior to the discharge, 4) length of time after the discharge the avoidance is sought, 5) reasons for delay in seeking the avoidance, 6) prejudice to the credi-

tor, and 7) good faith, or lack thereof, of the creditor. 89 B.R. at 76. This same court said: "The key factor in allowing the late avoidance of a lien pursuant to § 522(f) is whether the creditor is sufficiently *prejudiced* so that it would be *inequitable* to allow avoidance of the lien." *Id.* at 75–76. While both sides argued all seven factors, CNB basically complained that the Chabots waited 13 months before they filed their avoidance action, which was too long. This does not amount to prejudice.

of judgment or certified copy of the judgment is recorded to create the judgment lien.

(2) The homestead exemption set forth in Section 704.730.

■ Subsection (c) makes it clear that a judicial lien may attach to any equity remaining in the property after subtracting all prior liens and the homestead exemption.[2] CNB's abstract of judgment was recorded after the Chabots recorded their declaration of homestead, but there was equity in the residence: $400,000 (value of the home)—$86,412.42 (1st deed of trust)—$38,540.88 (2nd deed of trust)—$45,000 (homestead exemption) = $230,046.70 in surplus equity.[3] Because there was surplus equity, CNB's lien attached to it.

### D. What Law Determines Whether Impairment Occurred?

■ Before we can decide whether the Chabots' homestead exemption was impaired by CNB's lien, we must analyze whether the correct law was used by the lower courts in determining impairment. The Chabots contend that the bankruptcy court, and presumably the district court through its adoption of the bankruptcy court's decision, erroneously applied state law in determining that the CNB lien did not impair their homestead exemption. Whether a particular lien impairs an exemption is an issue of federal bankruptcy law. In re Kruger, 77 B.R. 785, 786 (Bankr.C.D.Cal.1987).

In the instant case, the bankruptcy court said: "Under the applicable California law on this homestead declaration, the Bank's judicial lien does not impair the debtors' exemption. In fact, the Bank has explicitly conceded that it does not dispute the debtors' claim to a $45,000 homestead exemption." The Chabots argue that the bankruptcy court relied on California's statute to conclude that the homestead was not impaired because it

was recorded before the judgment. The court, however, was merely referring to California law in order to set the amount of the homestead exemption at $45,000 and to establish its priority over CNB's lien. The exemption was not impaired because CNB's lien did not affect it. Thus, the court did not rely on California law to determine impairment. California law only fixed the amount and priority of the exemption.

Furthermore, the district court correctly decided the impairment issue based on federal law. The court reasoned that, based on the plain meaning of the federal statute, the Chabots' homestead exemption was not impaired because it was not harmed by CNB's lien. It also stated that the meaning of section 522(f) was based on the plain meaning of the federal statute as well. We agree with the district court. The appellants have no reason to complain about the law used to determine impairment.

### E. Did CNB's Lien Impair the Chabots' Homestead Exemption?

■ This is the heart of the dispute. The Chabots argue that CNB's lien impairs their homestead exemption and, therefore, it should be avoided. 11 U.S.C. § 522(f) reads,

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien....

The Chabots would have us take a broad view of the term "impair" and analyze it with reference to the "fresh start" policy. Under this analysis, any unsecured portion of a lien should be avoided because otherwise it will linger after discharge, attach to any post-petition appreciation in the property, and

---

2. Although the commentary to section 704.950 suggests a different result, it also states that it was not amended to reflect the addition of subsection (c).

3. This is giving full force to the subordination agreement. Even if, for some unknown reason, the subordination agreement was not enforceable, and the $173,000 lien was satisfied before

CNB's lien, there would still be surplus equity to which CNB's lien could attach. Since we hold that CNB's lien may not be avoided, and the subordination agreement does not affect this analysis, we need not consider the effect of the subordination agreement or the extent to which CNB is undersecured.

thereby hinder the debtors' fresh start. To paraphrase, to the debtor should go the appreciation.[4]

We think a simpler view of section 522(f), which protects the amount of the exemption only, is dictated by the plain meaning of the statute. A statute should be interpreted according to its plain meaning. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). In addition, it should be remembered that liens and other secured interests generally survive bankruptcy. *Farrey v. Sanderfoot*, — U.S. —, —, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991). Here, the statute specifically says the lien may only be avoided "to the extent that" it impairs the exemption. Under the plain meaning of the statute, then, an exemption is not impaired unless its amount is diminished in value. CNB's lien has no impact on the Chabots' ability to recover their $45,000 homestead exemption. Therefore, it is not impaired and cannot be avoided.[5]

■ We disagree with the Chabots' claim that they must receive post-petition appreciation in their property in order to be afforded their right to a fresh start. The Bankruptcy Code allows debtors certain exemptions to ensure they receive a fresh start after bankruptcy. These exemptions are not unlimited, however. In this case, where the debtors claimed state, rather than federal exemptions, the homestead exemption is limited to $45,000 by California law. The Chabots are

entitled to this amount and no more. There is no basis for the proposition that the homestead exemption provides ownership benefits, such as the right to appreciation, beyond the set amount.

Our holding is consistent with the recent Supreme Court case *Dewsnup v. Timm*, — U.S. —, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Although the Court was considering section 506(d) of the Bankruptcy Code, the issue before the Court was lien avoidance. The Court in *Dewsnup* reasoned that "[t]he practical effect of petitioner's argument is to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property.... The increase would accrue to the benefit of the debtor." *Id.* — U.S. at —, 112 S.Ct. at 778. The Court disagreed with such a result and noted that the lien stays with the property until foreclosure. *Id.* The Court declared that "[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor...." *Id.*

This circuit spoke to the issue of who receives the benefit of post-petition appreciation in *In re Hyman*, 967 F.2d 1316 (9th Cir.1992). Although the issue was not central to the decision, the court said, "[w]ere we to accept the [debtors'] argument that they're entitled to post-filing appreciation, we would also have to hold that a debtor is

---

4. This approach was taken in several bankruptcy decisions. *E.g., In re Galvan*, 110 B.R. 446, 451–52 (Bankr.9th Cir.1990) ("[T]he unsecured portion of a judicial lien is properly avoided under Section 522(f) as it 'impairs' the debtor's right to fully realize any homestead exemption and post-petition property appreciation."); *Kruger*, 77 B.R. at 787 ("While this court is uncomfortable with the concept that a debtor can file bankruptcy, remove liens from the real property, and then continue to hold onto the real property and reap the fruits of its appreciation, this is the intent of the Bankruptcy Code."); *In re Rappaport*, 19 B.R. 971, 973 (Bankr.E.D.Pa.1982) ("[D]ebtors should be the ones to benefit from any appreciation of their property *after* the filing of their petition for relief.").

   The Chabots halfheartedly claim that the bankruptcy and district courts should have followed the lead of the Ninth Circuit Bankruptcy Appellate Panel. The issue of impairment is one of first impression in this circuit, and we decide this

case without considering the effect of the Bankruptcy Appellate Panel on other courts.

5. Various bankruptcy decisions support this reasoning. *E.g., In re West*, 68 B.R. 647, 648–49 (Bankr.C.D.Cal.1986) ("[A]voidance of a judicial lien is limited by the amount of the exemption because the amount of the exemption establishes the outside boundary of impairment."); *In re D'Ambrosia*, 61 B.R. 588, 590 (Bankr.N.D.Ill. 1986) ("[A] judicial lien cannot be avoided to the extent it reaches non-exempt property of the estate."); *see also Alu v. State of N.Y. Dep't of Taxation and Fin.*, 41 B.R. 955, 957–58 (E.D.N.Y. 1984); 3 Collier on Bankruptcy ¶ 522.29[1], at 522–96–97 (15th ed. 1992). This was also the reasoning of a Fourth Circuit panel that considered the issue in dicta. *In re Opperman*, 943 F.2d 441, 444 (4th Cir.1991) ("Thus, only that part of a lien which actually interferes with the debtor's homestead exemption may be avoided.").

subject to post-filing *de*preciation." *Id.* at 1321. Clearly the Bankruptcy Code does not envision such fluctuations in the value of an exemption. Debtors are entitled to the set amount of the exemption, no more and no less. If debtors wish to realize any appreciation, they can sell the property, receive the exempt amount from the proceeds, and invest it as they see fit.

We hold that the debtors' homestead exemption will not be diminished in value by the creditor's judicial lien. Thus, it is not impaired; therefore, the judicial lien may not be avoided pursuant to 11 U.S.C. § 522(f).

AFFIRMED.