**In re Alton J. WILSON, Debtor.**

**This Order relates to ALL APPEALS.**

**No. C–94–2757–VRW.**
**Bankruptcy No. 94–400031–JP.**

United States District Court,
N.D. California.

Nov. 22, 1994.

Melanie M. Darling, Law Offices of Max Cline, Oakland, CA, for Alton J. Wilson.

George Wynns, pro se.

## ORDER

WALKER, District Judge.

Alton J. Wilson appeals the bankruptcy court's decision not to avoid a judicial lien held by George S. Wynns. Wynns cross-appeals the bankruptcy court's determination that Wilson is entitled to a homestead exemption under California law.

Wilson claims a homestead exemption on his property at 3392 64th Avenue, Oakland, California, (the property) in which he holds a one half interest as a joint tenant with his wife, Redeemer G. Wilson, who owns the other half. Wilson admittedly has not lived in the property for some number of years. His wife, who is disabled within the meaning of California Code of Civil Procedure § 704.730(a)(3)(B), does live in the property and has also claimed a homestead exemption in the property in prior bankruptcy proceedings.

The parties agree that the fair market value of the property is $130,000 and that Wilson's interest is worth $65,000. On January 3, 1994, the date Wilson petitioned for bankruptcy, the property was encumbered by a deed of trust in favor of Bank of America securing a debt of $14,067. Wynns' judicial lien, recorded in early February 1994, is for $14,548.61.

Wilson argued in the bankruptcy court that Wynns' judicial lien must be avoided under 11 U.S.C. § 522(f) because it would impair the value of his homestead exemption in the property. Following *In re Chabot*, 992 F.2d 891 (9th Cir.1993), the bankruptcy court held that because Wynns' judicial lien is junior to Wilson's exemption, the lien did not impair the value of the exemption and that the lien therefore did not need to be avoided, 167 B.R. 599. Wilson claims the bankruptcy court misapplied *Chabot*, which is distinguishable from the instant case. In *Chabot*, Wilson argues, the Ninth Circuit was able to hold a judicial lien did not impair the debtor's homestead exemption because there was surplus equity in the homestead property above the value of all consensual liens and the amount of the homestead exemption. In the instant case, in contrast, Wilson claims there is no surplus equity in the property above

the amount of consensual liens and Wilson's claimed exemption, so that any judicial lien imposed necessarily impairs the value of Wilson's exemption.

Wynns cross-appeals the bankruptcy court's decision that Wilson is entitled to a homestead exemption in the property. Noting that Wilson has not lived in the property for some time, Wynns argues the bankruptcy court's determination that he was married to his wife, and therefore entitled under California law to a homestead exemption in the property in which she lived, was not based on substantial evidence. Wynns also argues that California law only allows one spouse to claim a homestead exemption in a given property and that, because Wilson's wife claimed a homestead exemption in the property in a prior bankruptcy, Wilson is precluded from doing so. Alternatively, Wynns claims the court should treat him as a secured rather than unsecured creditor, giving him priority over Wilson's claimed exemption.

I

■ Whether Wilson is entitled to a homestead exemption is a question of law which the court reviews de novo. *In re Tompkins*, 95 B.R. 722, 723 (9th Cir. BAP 1989). In doing so, the court must accept the bankruptcy court's findings of fact unless clearly erroneous. Bankr.R. 8013.

California law defines a homestead as:

the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date of the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court's determination that the dwelling is a homestead.

Cal.Civ.Proc.Code § 704.710(c). In determining that Wilson is entitled to claim the property as a homestead, the bankruptcy court found (1) that Alton and Redeemer Wilson are legal spouses and (2) that Redeemer Wilson lived on the property for the relevant period necessary to satisfy this statutory definition.

Wynns challenges the first of these conclusions, arguing that Alton and Redeemer Wilson were not living together and should be presumed not married. The bankruptcy court apparently relied on the statements of Wilson's attorney that Alton and Redeemer Wilson are legally married as evidence in support of the fact. See Tr. of Proceedings at 6. Given that there was apparently no contradictory evidence offered to the bankruptcy court, this court cannot determine that the bankruptcy court's finding that Alton and Redeemer are married, based on Wilson's attorney's assertion, was clearly erroneous. Indeed, Wynns now argues only that the court should presume Alton and Redeemer are not married from the fact that they have lived apart for several years. Wynns provides no legal support for this presumption, however, and in the context of the homestead exemption such a presumption is unwarranted. The clear language of the definition of a homestead, quoted above, indicates the California legislature contemplated allowing separated spouses to claim a homestead in one of their residences. The legislature also provided an exception to this rule, preventing one spouse from relying on the occupancy of the other to claim a homestead exemption following a decree of legal separation. Id. § 704.710(d). No exception exists for physically separated spouses, and creating one would be contrary to the plain language of the statute.

Wynns also argues that Redeemer Wilson's claim of a homestead exemption for her interest in the property in a prior chapter 13 bankruptcy proceeding precludes Alton Wilson from now claiming a homestead exemption for his half interest. Wynns bases this argument on California Code of Civil Procedure § 704.720(c), which provides: "If the judgment debtor and spouse of the judgment debtor reside in separate households, only the homestead of one of the spouses is exempt and only the proceeds of the exempt household are exempt." Wynns reads this statute, along with the definition of a homestead, to prevent both Alton and Redeemer from claiming an exemption for their half interests in the property.

Cases discussing the application of California's homestead exemption to property held by spouses in joint tenancy appear to support Wynns reading of the statute. In *Strangman v. Duke,* 140 Cal.App.2d 185, 295 P.2d 12 (1956), a husband declared a homestead in his interest in property held with his wife in joint tenancy. The question before the court was whether the husband could apply the entire exemption to his interest in the property to prevent execution against his interest by creditors. The court held that he could. In doing so, however, the court noted that "[h]usband and wife cannot have two homesteads, not even upon different properties, and of course cannot have two homesteads upon different interests in the same property." Id. at 189, 295 P.2d 12 (citations omitted).

In *In re Schneider,* 9 B.R. 488 (N.D.Cal. 1981), a husband and wife together declared a homestead exemption on property they held in joint tenancy. The wife, the judgment debtor in the case, then sought to apply the entire exemption to her one-half interest in the property to prevent the judgment creditor from executing against her interest in the property. *Id.* at 489. On appeal, the district court allowed this application, notwithstanding the objection of the bankruptcy trustee, who feared allowing the wife to apply the entire exemption to her portion of the property would effectively enable the husband to obtain a second homestead exemption. As the district court wrote:

> The homestead exemption is not apportionable and there is only one exemption as between husband and wife. * * *
>
> The debtor * * * has first filed and claims the family homestead exemption declared jointly by her and her husband. If her husband subsequently files in bankruptcy he may claim only those exemptions to which he is entitled under state law. Under that law there is no allowable homestead exemption because that exemption has already been asserted by his spouse. Thus the fear of the trustee is unfounded.

Id. at 491; see also *Schoenfeld v. Norberg,* 11 Cal.App.3d 755, 90 Cal.Rptr. 47 (1970) (determining that a spouse holding a homestead as joint tenant is entitled to the value of his

entire homestead exemption against his creditors).

■ *Strangman* and *Schneider* each articulate the rule that under California law a husband and wife are entitled to only one homestead exemption between them. This rule is consistent with the language of Civil Procedure sections 704.710(d) & 704.720(c). It is also sensible. The contrary rule, that each spouse is entitled to the full benefit of a homestead exemption for his or her separate interest in a single property, would allow married couples to effectively double the value of their homestead exemption.

Nevertheless, this interpretation of the applicability of the homestead exemption to property held in joint tenancy does not prevent Alton Wilson from claiming a homestead exemption for his interest in the property in the present case. California's homestead exemption has two functions depending on whether a creditor is able to foreclose on the homestead property. If the value of a debtor's homestead is less than the amount of the exemption allowed by statute and the amount necessary to satisfy existing liens, the homestead exemption allows the debtor to avoid a creditor sale of the homestead. See Cal.Civ. Proc.Code § 704.800(a). If the debtor's equity in the homestead is greater than the amount of the exemption, then a creditor may force a sale; proceeds of the sale in the amount of the exemption go to the debtor, however, and the creditor gets only the surplus. Id. § 704.740(a).

■ *Strangman* and *Schneider* considered only the situation of a debtor invoking his or her homestead exemption to protect his or her interest in the proceeds of the sale or transfer of the homestead. For those purposes, the couple is entitled to only one exemption in the amount allowed by statute. Where the homestead exemption is being used to determine whether there is any surplus equity in the property to justify a creditor sale, however, courts have held that both husband and wife are entitled to declare homesteads until one of their creditors is able to force a sale. As the Ninth Circuit bankruptcy appellate panel stated:

> [W]here the husband and wife hold property as joint tenants, the entire homestead exemption "floats" between their interests until one of the other's creditors can force a sale. * * * The homestead exemption is not used up each time it is asserted as a shield, but rather, only when the property is sold. It permanently protects both spouse's undivided fractional interests in the property until it is determined that a sale can be forced. If a sale can be forced, then the exemption is allocated to the judgment debtor's interest and no longer "floats" between the joint interests.

*In re Bartlett,* 24 B.R. 605, 607 (9th Cir. BAP 1982).

To understand why this distinction does not allow a married couple to increase the amount of their homestead exemption by holding property in joint tenancy, it is helpful to compare the couple to an individual who has obligations to several creditors. Assume that debtor's equity in his homestead is $40,000 and that he is entitled to a $50,000 homestead exemption under California law.[1] Further, assume creditors A and B each have a $30,000 claim against debtor. By invoking his exemption, debtor is able to avoid $60,000 in obligations by preventing foreclosure, notwithstanding the fact that, by statute, he is entitled to only a $50,000 exemption.[2]

■ The Wilsons' use of the homestead exemption in the instant case is similar to that of the individual facing multiple creditors. Alton and Redeemer Wilson are each asserting the entire amount of their homestead exemption against their individual interests in the property to prevent foreclosure. Under California law as interpreted by *Bartlett,* they are entitled to do this until one or the other's creditors forces a sale. No such sale has occurred. Both Alton and Redeemer Wilson are therefore entitled to declare the full amount of their homestead ex-

---

**1.** This is the usual amount of the homestead exemption under California law. See Cal.Civ. Proc.Code § 704.730.

**2.** This argument assumes the debtor is able to avoid the both creditors' claims entirely, a topic discussed in Part II of this order.

emption in their individual half interests in the property.

▮ As an alternative basis for claiming the bankruptcy court erred in finding that Alton Wilson was entitled to claim a homestead exemption, Wynns argues Wilson abandoned his homestead. As with Wynns' claim that Wilson and his wife are not legally married, the bankruptcy court appears to have considered this factual issue and determined it in Wilson's favor based on his attorney's assertions that Wilson's wife has lived in the property for the relevant period and that Wilson had not established another homestead. See Tr. of Proceedings at 4–5. Given that definition of a homestead in § 704.710(d) expressly allows one to claim a homestead when one's spouse has continuously resided in the homestead property for the necessary period of time, and given that the parties do not dispute that Redeemer Wilson lived at the property for the relevant period, the court's finding that Wilson was entitled to his exemption based on his spouse's residency at the property is not clearly erroneous.

▮ For these reasons, the court finds that the bankruptcy court did not err in finding that Alton Wilson is entitled to claim a homestead exemption in his interest in the property, notwithstanding that his wife claimed the entire amount of the couple's exemption in her half interest in the same property. This conclusion eliminates the need to consider Wynns' argument that the bankruptcy court erred by not treating him as a secured creditor as this argument is premised on the assumption Wilson was not entitled to his homestead exemption. The judgment of the bankruptcy court that Wilson is entitled to a homestead exemption is **AFFIRMED.**

## II

▮ Wilson appeals the bankruptcy court's finding that he was not entitled to avoid Wynns' judicial lien under 11 U.S.C. § 522(f). Section 522(f) allows a party in bankruptcy to avoid a judicial liens "to the extent that such lien impairs an exemption"

to which the debtor is otherwise entitled. Wilson claims Wynns' lien impairs the value of his homestead exemption by attaching to his interest in the property and that it should therefore have been avoided. Whether a lien impairs an exemption is a issue of federal bankruptcy law. *In re Kruger*, 77 B.R. 785, 786 (Bankr.C.D.Cal.1987). The court reviews the bankruptcy court's determination of this issue de novo.

The bankruptcy court held that Wynns judicial lien does not impair the value of his homestead exemption within the meaning of § 522(f).[3] This decision was based largely on *In re Chabot*, 992 F.2d 891 (9th Cir.1993). In *Chabot*, the debtors had over $230,000 in equity in their homestead above the amount of consensual liens and their homestead exemption; the Ninth Circuit held they could not avoid a $241,579 judicial lien. In so holding, the Ninth Circuit interpreted § 522(f) as protecting the amount of the homestead exemption only, but not allowing the avoidance of liens that could attach to equity in the property above the value of the exemption. Id. at 895. According to the Ninth Circuit, this interpretation follows from the plain meaning of § 522(f) and is consistent with the state's policy behind having a homestead exemption, which is to provide debtors with protection for the amount of the exemption. Id. at 896.

The Ninth Circuit in *Chabot* sought to avoid an interpretation of § 522(f) that allows a debtor to realize a post-bankruptcy benefit of his homestead exemption in an amount greater than provided by the exemption. This would happen if, while in bankruptcy, a debtor avoided certain liens, to find upon leaving bankruptcy that the value of his homestead had appreciated to an amount greater than the amount of the original exemption. Under the Ninth Circuit's interpretation, liens should not be avoided in those circumstances, so that the value of appreciation accrues to the lienholder, not to the debtor. Id. at 895–96.

**3.** The bankruptcy court noted during oral argument that whether a judicial lien impairs a homestead exemption when the debtor has no surplus equity to which the lien can attach is an issue of controversy among California bankruptcy judges. See Tr. of Proceedings at 8, 14–15.

Wilson argues *Chabot* is distinguishable from the instant case because in *Chabot* the lien could attach to surplus equity over the amount of consensual liens and the homestead exemption. In contrast, once the amount of Wilson's homestead exemption and his consensual liens are subtracted from the value of Wilson's property, there is no surplus equity to which Wynns' judicial lien can attach. Wilson argues that California bankruptcy cases clearly demonstrate that when there is no surplus equity for a judicial lien to attach to, the judicial lien necessarily impairs the debtor's homestead exemption under § 522(f). For example, in *In re Galvan*, 110 B.R. 446 (9th Cir. BAP 1990), the Ninth Circuit bankruptcy appellate panel described the process for determining impairment under § 522(f). Determining impairment "requires the fact finder to subtract the allowed amount of the judicial lien from the equity determined to exist * * * *. If the deduction leaves equity which is less than the available exemption, impairment arises to the extent of the deficiency. If no equity remains, impairment of the available exemption is complete." Id. at 450; see also *In re Bruton*, 167 B.R. 923, 926 (Bankr.S.D.Cal. 1994) ("In analyzing whether a judgment lien impairs a debtor's exemption, we determine whether the debtor has any equity above the senior consensual liens and the debtor's homestead exemption. If the creditor's lien is found to have no present economic value, then it is avoided in its entirety.") (citation omitted).

The cases upon which Wilson relies are based on an interpretation of federal bankruptcy law's "fresh-start" policy. As expressed by the Ninth Circuit bankruptcy appellate panel in *Galvan:*

Section 522(f) is one of the significant provisions of the Bankruptcy Code directed to assuring that the debtors gain a fresh start in their financial lives. * * *

Allowing the unsecured portion of a judicial lien to remain as a charge against property, in which the debtor has exemption rights, is a significant impairment of the debtor's right to a fresh start.

*Galvan*, 110 B.R. at 451; see also *In re Herman*, 120 B.R. 127 (9th Cir. BAP 1990) ("The lesson of *Galvan* is that the concept of impairment for purposes of section 522(f) should not be construed restrictively. Rather impairment should be construed in a manner consistent with the fresh start purposes served by the applicable Code positions."). The fresh start policy, according to the *Galvan* court, has two consequences: First, it requires avoiding judicial liens unless the debtor has surplus equity in the homestead (calculated after protecting an amount equal to the debtor's homestead exemption) because the presence of such liens would reduce the amount the debtor could receive for his homestead in post-bankruptcy sales, possibly to an amount less than his homestead exemption. Second, fresh start allows debtors to "reap[ ] the fruits of post-petition appreciation of the debtor's real estate." *Galvan*, 110 B.R. at 451.

The Ninth Circuit in *Chabot* expressly rejected the second consequence of *Galvan*. "We disagree with the Chabots' claim that they must receive post-petition appreciation in their property in order to be afforded their right to a fresh start." *Chabot*, 992 F.2d at 895. Still, because there was surplus equity in *Chabot* to which the judgment lien could attach, the Ninth Circuit was not forced to confront the first consequence of *Galvan*'s view of fresh start, i.e., guaranteeing that debtors obtain at least the value of their homestead exemption when they come out of bankruptcy.

The policy of not allowing debtors to benefit from post-petition appreciation in their homesteads is in conflict with the bankruptcy law's policy of providing a set amount of a homestead exemption. Preventing debtors from reaping the benefits of appreciation justifies not avoiding partially unsecured liens, as the Ninth Circuit did in *Chabot*. When the amount of the exemption to which a debtor is entitled is greater than the present value of his homestead property, however, the debtor is entitled to appreciation in the property to the extent the appreciation brings the value of the property up to the amount of the exemption. As the *Chabot* court noted, "Debtors are entitled to the set amount of the exemption, no more and no less." 992 F.2d at 896. Thus, when there is

no surplus equity, the debtor should be entitled to avoid a lien when avoidance is reasonably necessary to provide the debtor the full amount of his exemption. Once the debtor is assured of protecting the amount of the exemption, *Chabot* prevents him from receiving any more.

■ Ideally, the law would provide a mechanism that allows a lien to remain on a debtor's property subordinated to the debtor's homestead exemption. Unfortunately, for an automatic homestead such as Wilson is claiming, this is possible only while the debtor is in bankruptcy. Once he emerges from bankruptcy, he loses the protection of the homestead exemption and the lien effectively becomes superior to the debtor's equity in the property.

As a second-best solution to this dilemma, bankruptcy courts have fashioned the rule that impairment of an exemption exists within the meaning of § 522(f) if the debtor has no surplus equity in the property to which the lien the debtor seeks to avoid can attach. See, e.g., *Galvan,* 110 B.R. at 446. There are sound reasons for this rule beyond allowing the debtor to obtain the benefits of appreciation, the purpose rejected by the Ninth Circuit in *Chabot.* The presence of a lien on the debtor's property decreases the value of the debtor's property both during and after bankruptcy. If there is no surplus equity in the property after accounting for the value of the debtor's exemption, then during bankruptcy the debtor may not be able to realize the full value of the exemption. An example illustrates this point. Suppose Wynns' lien on Wilson's interest in the property is not avoided and, while Wilson is in bankruptcy, a purchaser is willing to buy Wilson's interest for an unencumbered value of $100,000. Because transfer of the property will not eliminate Wynns' lien, however, the purchaser must lower his price. The presence of the lien thus prevents Wilson from obtaining the full value of his exemption.

■ The bankruptcy law's policy of providing debtors the value of their homestead exemption when they emerge from bankruptcy requires avoiding Wynns judicial lien against Wilson's interest in the property. Under California law, Wilson is entitled to a homestead exemption of $100,000.[4] The value of his interest in the property is $65,000, and the property is encumbered by a consensual lien of approximately $14,000. Ignoring the homestead exemption, Wilson has $51,000 in equity in the property. Because of the homestead exemption, however, he is entitled to come out of bankruptcy with up to $100,000 in equity in his homestead property. It is easy to imagine a situation in which allowing Wynns' lien to remain on the property would prevent this from happening. For example, if Wynns' lien remains on the property and Wilson sells his interest in the property for $105,000 after coming out of bankruptcy, Wynns will receive $12,000 (ignoring any interest he may accrue), and Wilson will have only $93,000.

It is undisputed that Wilson has no surplus equity in the property once his homestead exemption is accounted for. Avoiding Wynns' lien is reasonably necessary to allow Wilson to obtain the full amount of his exemption. There would need to be almost a doubling in value of Wilson's interest in the property before Wynns' lien would not impair Wilson's exemption. For this reason, the decision of the bankruptcy court must be **REVERSED.**

IT IS SO ORDERED.

---

4. Wilson is able to claim a $100,000 homestead exemption because of his wife's disability. Cal. Civ.Proc.Code § 704.730(a)(3)(B).