## In re CAPITOL METALS CO., INC., Debtor.

**Official Committee of Unsecured Creditors, Appellant,**

v.

**ABC Capital Markets Group and Capitol Metals Co., Inc., Appellees.**

BAP No. CC–98–1266–MeKB.

Bankruptcy No. LA 97–48259KM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 23, 1998.

Decided Dec. 16, 1998.

Marc J. Winthrop, Winthrop Couchot Professional Corp., Newport Beach, CA, for Official Committee of Unsecured Creditors.

Andrew A. Goodman, Greenberg & Bass, Encino, CA, for ABC Capitol Markets Group.

Before: MEYERS, KLEIN and BRANDT, Bankruptcy Judges.

### OPINION

MEYERS, Bankruptcy Judge.

## I

The bankruptcy court authorized Capitol Metals Co. ("Capitol" or "Debtor") to employ ABC Capital Markets Group ("ABC") as its exclusive financial advisor and investment banker. The Official Unsecured Creditors Committee ("Appellant") appealed the order on the grounds that ABC is not disinterested. We agree and **REVERSE.**

## II

### FACTS

In November 1995, the Debtor, ABC and L.E. Pete Peterson, ("Peterson") entered an agreement entitled Memorandum of Understanding ("Memorandum"). The Memorandum stated that Capitol retained Peterson as its Chief Financial Officer ("CFO") for which he would be paid $2,000 per week. The Memorandum also stated that Capitol retained ABC to act on its behalf to effectuate a sale of Capitol, which would result in compensation based on the net amount of the sale. On December 23, 1996, Capitol and ABC signed a "Consulting Agreement" through which Capitol hired ABC as a consultant to function as Capitol's CFO at the rate of $2,000 per week. Peterson and his wife are the only two principals of ABC, and Peterson is the only person at ABC who worked on transactions with Capitol.

Peterson solicited 56 potential buyers for Capitol and assisted it in obtaining a new line of credit. One of the interested purchasers was Consolidated Capital of North America ("CCNA"). CCNA entered a prepetition letter of intent to purchase Capitol, but withdrew the offer on September 12, 1997. At that point, CCNA informed Capitol and Peterson that it was not interested in pursuing negotiations. Capitol then filed a Chapter 11 petition on October 7, 1997.

At the Debtor's request, Peterson began contacting the potential buyers again. CCNA made a new, lower offer to purchase the company. On October 27, 1997, the Debtor sought approval of the terms of the transaction with CCNA by filing a motion which described Peterson's efforts to find a buyer for the company ("Overbid Motion"). After a hearing on the proposed sale in December 1997, the sale to CCNA was eventually consummated in January 1998.

On December 12, 1997, the Debtor filed an application to employ ABC as its exclusive financial advisor and investment banker ("Application"). The Application had been delayed while the Debtor and ABC negotiated, drafted and signed the postpetition engagement agreement. The court denied the Debtor's request for an expedited hearing on

the Application and a further delay occurred when the Debtor's attorney failed to send a notice of the hearing in a timely manner.

The Application and accompanying declaration of Peterson disclosed that the Debtor had hired ABC as a financial consultant in late 1995 to help the Debtor sell the business and raise additional capital, and that ABC was paid $2,000 per week for its services. The United States Trustee and the Appellant both objected to the appointment. At the conclusion of the first hearing, the court continued the matter and requested additional briefing and evidence from the parties. At a final hearing on March 17, 1998, the United States Trustee withdrew its objections and the court considered Appellant's arguments.

The Appellant contended that ABC was not disinterested due to the prepetition employment of Peterson as the Debtor's CFO. The Appellant argued that the unambiguous language of the Memorandum proved that Peterson was the Debtor's CFO within the three years before the petition was filed and therefore was excluded from being hired.

In response, ABC supplied evidence that neither Peterson nor ABC was actually hired as the Debtor's CFO; they just provided financial services in the capacity of consultants and performed the functions of a CFO.

The bankruptcy court stated it did not think the evidence showed that Peterson was the CFO and even if he was, ABC was the applicant, not Peterson. The court approved the employment with three conditions: (1) ABC had to waive any prepetition claim on the record, (2) the provision that the Debtor would indemnify ABC was not approved, and (3) ABC would be compensated on a quantum meruit basis rather than the requested flat fee of $250,000.

## III

### STANDARD OF REVIEW

The bankruptcy court's findings of fact may be reversed only if they are clearly erroneous. *In re Chabot,* 992 F.2d 891, 893 (9th Cir.1993).

■ The decision by a bankruptcy court to approve an employment application is gener-ally reviewed for abuse of discretion. *In re CIC Investment Corp.,* 175 B.R. 52, 53 (9th Cir. BAP 1994). However, to the extent the interpretation of the Bankruptcy Code is involved, it is a legal issue reviewed *de novo. Id.*

## IV

### DISCUSSION

The employment of professionals is governed by 11 U.S.C. § 327, which states:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional person if necessary in the operation of such business.

■ According to Section 1107(a), the Chapter 11 debtor in possession has the same ability as a trustee to hire professionals. That section further provides:

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

■ Among the requirements for employment is that the professional is a "disinterested person". A person is not disinterested if that person was a director, officer or employee of the debtor within two years of the date of filing the bankruptcy petition. 11 U.S.C. § 101(14)(D). A person who is not disinterested as that term is defined in § 101(14) is disqualified from acting as a

professional for the estate. *In re Weibel,* 176 B.R. 209, 212 (9th Cir. BAP 1994).

The Bankruptcy Code does not define the term "officer." *In re S.S. Retail Stores Corp.,* 211 B.R. 699, 701 (9th Cir. BAP 1997). Under California law:

> (a) A corporation *shall have* a chairman of the board or a president or both, a secretary, *a chief financial officer* and such other officers with such titles and duties as shall be stated in the bylaws or determined by the board . . . . Any number of offices may be held by the same person unless the articles or bylaws provide otherwise.

> (b) Except as otherwise provided by the articles or bylaws, officers shall be chosen by the board and serve at the pleasure of the board, subject to the rights, if any, of an officer under any contract of employment.

Cal.Corp.Code § 312 (emphasis added).

Peterson and the Debtor acknowledged that Peterson functioned as the Debtor's CFO. They argue that he was not really an officer, however, because the Board never took formal action in that regard. This argument must fail. A corporation is required to have a CFO by Cal.Corp.Code § 312(a). There is no evidence that the Debtor had any CFO other than Peterson or ABC, who admittedly functioned as such at the request of Capitol's CEO. Without such evidence, the Panel considers the person who functioned as the CFO to be the CFO, even without a corporate resolution to that effect.

The applicant bears the burden of proving that the standards for appointment have been met. *In re Crook,* 79 B.R. 475, 478 (9th Cir. BAP 1987). ABC failed to prove that it was disinterested, given the employment of Peterson and ABC as the Debtor's CFO during 1996 and 1997.

The bankruptcy court distinguished between ABC and Peterson in appointing ABC. There is authority for the proposition that a firm is not per se disqualified from representing a Debtor solely because a partner in the firm was an officer. *S.S. Retail Stores, Corp., supra,* 211 B.R. at 704. The firm involved in *S.S. Retail* was the large law firm of Gibson, Dunn & Crutcher. While a firm may not be per se disqualified under the circumstances of *S.S. Retail,* when the only person working with the Debtor is the person who is not disinterested, the disinterestedness standard would be eradicated by corporate form over substance. In this case, Peterson and ABC were each named as the person who would function as the Debtor's CFO within the three years before the bankruptcy petition was filed. It is the combination of a prepetition officer of the Debtor being hired as a financial advisor and investment banker that runs afoul of the disinterest requirements.

## V

### CONCLUSION

Peterson and ABC functioned as the Debtor's CFO during the three years before the Debtor filed its Chapter 11 petition. They are not disinterested as that term is defined by the Bankruptcy Code, and therefore are disqualified from being appointed as a professional in this case.

The bankruptcy court erred in authorizing the Debtor to employ ABC as its financial advisor and investment banker. Accordingly, we **REVERSE.**