**In re Emilio O. GONZALEZ and Bernadine A. Gonzalez, Debtors.**

**Bankruptcy No. 91–43082–JFQ.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 13, 1993.

Carl Aframe, Worcester, MA, for debtors.

Louis J. DiFronzo, Jr., Reimer & Braunstein, Boston, MA, for the First Nat. Bank of Boston.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Emilio O. Gonzales and Bernadine A. Gonzales (the "Debtors") have claimed a $4,235 exemption on their home at 254 Worcester Street, North Grafton, Massachusetts under section 522(d) of the Bankruptcy Code. They now move pursuant to section 522(f) to avoid entirely the $300,000 attachment lien on the property held by First National Bank of Boston ("the Bank"). Presented is the question of whether the Debtors' section 522(f) lien avoidance rights extend beyond the amount of their claimed exemption.

The Debtors' appraiser places the fair market value of the property at $129,100, which the Bank does not dispute. After deducting the $106,000 first mortgage held by another party, there is an equity of $23,100 available for the Debtors' claimed exemption of $4,235. The Debtors use this exemption figure rather than the higher amount allowed by section 522(d)(1) because in their schedules they valued the property at a liquidation value of $110,235. They have used a portion of their residual section 522(d)(5) exemption on other property. The Bank's $300,000 attachment would of course wipe out the Debtors' entire equity under either valuation standard were it not for the Debtors' section 522(f) avoidance rights.

The Debtors contend that complete rather than partial avoidance of the lien is justified by the fresh start policy of the Bankruptcy Code. Without total avoidance, they say, the fresh start which they are supposed to obtain from their bankruptcy discharge is impeded in two ways. First, they remain subject to the threat of a sheriff's sale. Second, they are prevented from enjoying any future increase in the property's value.

The fresh start policy is of course an important basis of bankruptcy law. *See, e.g., Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). But we do not decide cases on policy without first examining the applicable section of the Code. It is only when that examination does not produce a clear answer that a court may resort to policy and legislative history. Here the wording of the statute resolves the issue.

■ Section 522(f) reads in relevant part as follows:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a judicial lien.

The statute grants the Debtors avoidance rights "to the extent" the lien impairs their claimed exemption. The word "extent" means "range ... over which something extends." *Webster's Third New International Dictionary* (1986). Impairment of the Debtors' exemption cannot extend beyond the amount of the exemption, $4,235. This is the conclusion of the great majority of courts that have faced the question. *E.g., Wachovia Bank and Trust Co. v. Opperman (In re Opperman)*, 943 F.2d 441, 444 (4th Cir.1991) ("only that part of the lien which actually interferes with the debtor's homestead exemption may be avoided."); *City National Bank v. Chabot (In re Chabot)*, 131 B.R. 720, 722 (C.D.Cal. 1991) (court emphasizes phrase "to the extent that such lien impairs an exemption"); *In re Cerniglia*, 137 B.R. 722, 725 (Bankr. S.D.Ill.1992) ("[u]nder a plain reading of § 522(f)(1), a debtor's exemption is 'impaired' to the extent a judicial lien attaches to the otherwise exempt property interest and prevents the debtor from getting the benefit of the exemption"); *In re Prestegaard*, 139 B.R. 117, 119 (Bankr.S.D.N.Y. 1992) ("there is nothing in the statute which permits a debtor to avoid a judicial lien to the extent it exceeds the otherwise available ... exemption").

Granting the Debtors only partial avoidance rights is consistent with the position that a debtor may not avoid judicial liens under section 522(f) where the debtor has no equity in the property after deducting unavoidable mortgage liens. *See, e.g., First of America Bank v. Gaylor (In re*

*Gaylor),* 123 B.R. 236, 240 (Bankr. E.D.Mich.1991). Nor are partial avoidance rights in conflict with section 551 which preserves avoided liens for the benefit of the bankruptcy estate. That section does not purport to govern the extent of any lien avoidance power.

■ Decisions going the other way on this question interpret the word "impairs" broadly to apply to the debtor's entire property interest, and they incorporate a section 506(d) "strip down" analysis. *See, e.g., Galvan v. Galvan (In re Galvan),* 110 B.R. 446 (9th Cir.BAP 1990); *In re Magosin,* 75 B.R. 545 (Bankr.E.D.Pa.1987). The object of the verb "impairs", however, is the debtor's exemption, not his over-all property interest. And section 506(d) is not available as a lien avoidance remedy for these chapter 7 debtors after *Dewsnup v. Timm,* — U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

This same question has been addressed by my colleague, Judge Hillman, in *In re D'Amelio,* 142 B.R. 8 (Bankr.D.Mass.1992), which also involved judicial liens that consumed the debtor's entire equity. *D'Amelio* denied to the debtors the right to totally avoid judicial liens under section 522(f). Rather than avoiding that part of the lien equal to the debtor's exemption, however, *D'Amelio* preserved the entire lien and subordinated it to the exemption. I agree that subordination is necessary where the lien exceeds the exemption. I respectfully disagree, however, with the conclusion that no portion of the lien should be voided. The statute says the debtor "may avoid" the lien. The word "avoid" means "[t]o annul; concede; make void." *Black's Law Dictionary,* (5th Ed.1979). The question is admittedly academic where, as in this case and in *D'Amelio,* the lien dwarfs a debtor's equity.

■ The Debtors urge adjudication of a second issue—the standard of valuation to be employed. They contend that liquidation value should control. But just because the Debtors employed that standard in computing their exemption does not require me to decide the valuation standard. I deal with the Debtors' exemption in the amount claimed. I see no reason, in any event, to value the property at other than its fair market value. We are dealing here with the valuation of a fee interest, not a mortgage interest generally worth no more than what it will bring at foreclosure. Compare *In re Robbins,* 119 B.R. 1, 5 (Bankr.D.Mass.1990).

■ The Debtors are barred from now amending their exemptions to reflect their interest in the excess value of the property. Bankruptcy Rule 4003 contains procedural rules for claiming exemptions but is silent on the issue of amending exemptions. Although Rule 1009 permits debtors to amend schedules until the case is closed, I conclude that the Debtors should not be allowed to amend their exemptions after they have sought relief relating to the originally claimed exemption. Courts interpreting former Bankruptcy Rule 110 have reached this result. *Matter of Eldridge,* 15 B.R. 594, 595 (Bankr.S.D.N.Y.1981) (prohibiting debtors from amending exemptions to claim state rather than federal exemptions.); *Redmond v. Tuttle, (In re Tuttle),* 16 B.R. 470, 472, 8 BCD 413, 415 (1981) (denying debtor's request to amend schedules to include monies discovered postpetition in debtor's checking account as exempt.); *See also, Doan v. Hudgins (Matter of Doan),* 672 F.2d 831, 833 (11th Cir.1982) (holding Rule 110 leaves courts no discretion to deny leave to amend schedules except upon a showing of bad faith or prejudice to creditors.)

Rule 110 reads much like the current Rule 1009. Both rules permit a debtor to amend schedules "as a matter of course" any time before the case is closed. In denying debtors' requests to amend exemptions the cited decisions reasoned that if an interested party would be prejudiced by the amendment the amendment should be disallowed. The *Tuttle* court recited the rule that "A change of exemptional (sic) selections could not be permitted after the exemptions have been determined *and* a party in interest has sought affirmative relief based on that determination." 16 B.R. at 472, 8 BCD at 414. Here, the Debtors themselves sought section 522(f) relief

based upon their claimed exemption. When the Debtors commenced this proceeding they chose a strategy hoping to void the Bank's entire lien. Their counsel presumably proposed a lower liquidation value, which required the lower exemption figure, so that the exemption would consume the entire equity and thus enhance the argument for total avoidance of the Bank's lien. It would be unfair to the Bank to permit the Debtors to amend their schedules now simply because their strategy was unsuccessful.

A separate judgment has issued voiding the Bank's attachment to the extent of $4,235 and subordinating the remaining portion to the Debtors' exemption of $4,235.