In re Peter WRENN, Debtor.

Peter WRENN, Plaintiff–Appellee,

v.

AMERICAN CAST IRON PIPE
COMPANY, Defendant–
Appellant.

No. 94–6013.

United States Court of Appeals,
Eleventh Circuit.

Dec. 22, 1994.

Gary Wayne Farris, Birmingham, AL, for appellant.

Ralph E. Coleman, Sr., Birmingham, AL, for appellee.

Before COX, Circuit Judge, FAY, Senior Circuit Judge, and CARNES *, District Judge.

PER CURIAM:

American Cast Iron Pipe Company (ACIPCO) appeals from a district court order avoiding its judgment lien on the house of Peter Wrenn, a bankruptcy debtor. Concluding that ACIPCO's lien remains valid after the discharge of the debt, and that Wrenn is not entitled to relief under either § 522(f) or § 506(d),[1] we reverse the district court and reinstate the bankruptcy court order.

I. Background

In 1976, Wrenn sued ACIPCO, his employer, pro se for alleged violations of Title VII. *American Cast Iron Pipe Co. v. Wrenn (In re Wrenn)*, 791 F.2d 1542, 1543 (11th Cir. 1986) (*Wrenn I*). At the close of a trial on the merits, the district court entered judgment for ACIPCO. *Id.* Concluding that Wrenn's claim was "totally frivolous," the district court ordered Wrenn to pay ACIPCO $20,480 in attorney's fees and costs. *Id.*

ACIPCO recorded the judgment with the judge of probate in Jefferson County, Alabama, where Wrenn owned two parcels of real property. One was his house on Tenth Avenue in Birmingham (the Homestead) and the second was a joint tenancy in a property on Mims Street (Mims Street), also in Birmingham. Recording the judgment gave ACIPCO a judgment lien on both properties. *See* Ala.Code § 6–9–211 (1993). ACIPCO

---

* Honorable Julie E. Carnes, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. All section references in the opinion text are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

also undertook to garnish Wrenn's wages. *Wrenn I*, 791 F.2d at 1543.

Wrenn then filed a petition for relief in bankruptcy under Chapter 7. In his schedules, Wrenn listed only one claim, ACIPCO's judgment, and one asset, the Homestead. Wrenn claimed a homestead exemption on the Homestead. He did not disclose his interest in Mims Street.

A motion to avoid ACIPCO's garnishment accompanied Wrenn's bankruptcy petition. ACIPCO opposed Wrenn's motion on the ground that Wrenn's debt resulted from "willful and malicious injury" and was therefore not dischargeable under § 523(a)(6). This court ultimately resolved the dispute in Wrenn's favor, avoiding the garnishment. *Wrenn I*, 791 F.2d at 1544. The bankruptcy court discharged the debt and closed the estate in 1987.

That same year, Wrenn's cotenant in Mims Street, Marguerite Clark, sued in state court to partition the property. Clark proposed to purchase Wrenn's one-half interest. ACIPCO intervened in the proceedings, claiming a right to the proceeds from the one-half interest by virtue of its judgment lien. The state court held that the judgment lien had survived the discharge of the underlying debt and ordered that ACIPCO receive the proceeds.

Wrenn then moved the bankruptcy court to reopen his case and avoid ACIPCO's judgment lien on the Homestead.[2] The bankruptcy court granted the motion to reopen. However, it granted the motion to avoid the judgment lien only to the extent it impaired Wrenn's $5,000 homestead exemption under Alabama law.

Wrenn appealed to the district court. The district court reversed, reasoning that the discharge of Wrenn's debt voided ACIPCO's judgment lien and that the fresh start principle entitled the debtor to increases in his interest in property following discharge. The district court entered an order avoiding the judgment lien on the Homestead in its entirety. ACIPCO appeals.

## II. Issue on Appeal and Standard of Review

ACIPCO raises one primary issue on appeal, contending that the district court erroneously avoided ACIPCO's judgment lien.[3] We review the district court's determination of law de novo. *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1383 (11th Cir.1990).

## III. Discussion

Wrenn and the district court offer three reasons why ACIPCO's lien is void or avoidable. We consider each of these possibilities in turn. We conclude that none of them justify avoiding the lien in full, and we therefore reverse the district court and reinstate the order of the bankruptcy court.

First, Wrenn argues that the lien is unenforceable because the discharge of the judgment against him avoids the judicial lien based upon it. We disagree. A discharge in bankruptcy "voids any judgment ..., to the extent that such judgment is a determination of the *personal liability* of the debtor." 11 U.S.C. § 524(a)(1) (1988) (emphasis added). Thus, discharge does not affect liability *in rem*, and prepetition liens remain enforceable after discharge. 3 *Collier on Bankruptcy* ¶ 524.02[1] (Lawrence P. King ed., 15th ed. 1994); *see Dewsnup v. Timm*, 502 U.S. 410, ——, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992); *Johnson v. Home State Bank*, 501 U.S. 78, 81–83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991); *In re Isom*, 901 F.2d 744, 745 (9th Cir.1990); *Southtrust Bank v. Thomas (In re Thomas)*, 883 F.2d 991, 997 (11th Cir.1989), *cert. denied*, 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990); *Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186, 189 (3d Cir.1987). We therefore conclude that ACIPCO's lien remains enforceable, unless some provision of the Bank-

---

2. Mims Street is not at issue in these proceedings.

3. ACIPCO divides its attack on the district court order into two discrete issues: first, whether the Supreme Court's recent interpretation of § 506(d) makes § 506(d) an improper basis for the order and second, whether § 522(f) is also an improper basis for avoiding the lien in full. We address these two issues together. Our disposition of these issues makes it unnecessary to address the other issues ACIPCO raises.

ruptcy Code aside from the discharge provision makes the lien avoidable.

Wrenn points to two such provisions that he argues allow him to avoid ACIPCO's otherwise valid lien: §§ 506(d) and 522(f).[4] Section 506(d) provides: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...." 11 U.S.C. § 506(d) (1988). Wrenn's § 506(d)–based statutory argument is unclear to us. We read the brief, however, to argue that the discharge of ACIPCO's judgment effectively disallowed ACIPCO's claim. Section 506(d) avoids liens to the extent that they secure claims that are not allowed. *See id.* According to Wrenn, § 506(d) avoids the lien because ACIPCO's claim is disallowed.

ACIPCO asserts that Wrenn's argument conflicts with the Supreme Court's interpretation of § 506(d) in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). We disagree that *Dewsnup* contradicts Wrenn's argument, but we nonetheless conclude that § 506(d) does not avoid ACIPCO's lien in the circumstances of this case.

In *Dewsnup,* the Court considered whether "a debtor [may] 'strip down' a creditor's lien on real property to the value of the collateral, as judicially determined, when that value is less than the amount of the claim secured by the lien." *Id.* at ——, 112 S.Ct. at 775. The Dewsnups had borrowed money from Louis Timm and granted Timm a deed of trust in their farmland. *Id.* The Dewsnups defaulted on the loan. *Id.* When Timm gave notice of default, the Dewsnups filed a bankruptcy petition. *Id.* at ——, 112 S.Ct. at 776. In the subsequent Chapter 7 proceedings, they moved to "strip" the lien, that is avoid the lien under § 506(d) to the extent it exceeded the judicially determined value of the farmland. *Id.* They argued that § 506(a)[5] had bifurcated Timm's secured claim into two claims: an "allowed secured claim," which was equal in value to the judicially determined value of the farmland, and an "allowed unsecured claim," which comprised the remainder of Timm's claim. *Id.* Section 506(d), according to their argument, explicitly avoided Timm's lien to the extent it was not an "allowed secured claim." *Id.* Therefore, Timm was not entitled as a secured creditor to any proceeds from the sale of the property in excess of the judicially determined value. *Id.* at ——, 112 S.Ct. at 777.

The Supreme Court rejected the Dewsnups' statutory interpretation. The Court adopted Timm's position that the phrase "allowed secured claim" in § 506(d) does not refer to the secured portion of a claim bifurcated by § 506(a). *Id.* at ——, 112 S.Ct. at 778. Rather, the phrase means a secured claim that has been allowed according to the claim allowance provisions in § 502. *Id.* The Court reasoned that § 506(d) is ambigu-

---

4. Wrenn also argues that the fresh start principle dictates that any postdischarge increase in Wrenn's equity in the Homestead accrue to his advantage rather than ACIPCO's. One of the core principles of bankruptcy, Wrenn argues, is giving the debtor a chance to start over. Taking advantage of that fresh start, Wrenn has made payments on the loan secured by his house and has thus accumulated substantial equity. Wrenn contends that to allow ACIPCO to levy on that equity would negate the fresh start guaranteed by a discharge in bankruptcy.

Wrenn may be correct that he is denied the benefit of a fresh start in this respect. However, he does not point to any Bankruptcy Code embodiment of the fresh start principle that permits or requires avoidance of the lien. However important the fresh start may be as a justification for the rights debtors enjoy under the Code, by itself it cannot disturb state-law property rights. *Cf. Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Johnson v. First Nat'l Bank,* 719 F.2d 270, 274 (8th Cir.

1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) (both rejecting arguments for equitable extensions of bankruptcy law beyond specific Code provisions). As we concluded above, ACIPCO's lien remains valid. Without an explicit fresh start section of the Bankruptcy Code to invalidate it, the lien is valid even if its existence violates the fresh start principle. We therefore conclude that the fresh start principle is not an adequate basis for avoiding the judicial lien.

5. Section 506(a) reads in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a) (1988).

ous and looked to congressional intent to choose among the possible interpretations. *Id.* at ——, 112 S.Ct. at 779. The Court noted that the Dewsnups' reading would effectively allow debtors to diminish liens to artificially low values. *Id.* at ——, 112 S.Ct. at 778. This result contravenes the longstanding rule that liens on real property pass through bankruptcy unaffected. *Id.* In the absence of express congressional intent to change the traditional rule, the Court declined to read the ambiguous statute to alter the rule. *Id.* at ——, 112 S.Ct. at 779. The Court concluded that since Timm's claim was secured and allowed, Timm was entitled to any proceeds collected up to the value of the claim. *Id.*

*Dewsnup* does not govern Wrenn's case. Unlike the Dewsnups, Wrenn does not seek to reduce ACIPCO's lien to the judicially determined value of the Homestead. Rather, Wrenn apparently argues that the lien is completely void because the discharge of the underlying debt effectively disallowed ACIPCO's claim. Wrenn's argument is consistent with *Dewsnup*'s interpretation of § 506(d): that § 506(d) avoids liens to the extent they secure claims that are not allowed. However, Wrenn's argument still fails.

The weakness of Wrenn's argument is that Wrenn points to no section of the Bankruptcy Code that provides that the discharge of ACIPCO's judgment automatically disallowed a claim based on that judgment. The Code provides rather that "[a] claim ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a) (1988). Wrenn has not objected to the allowance of ACIPCO's claim, and thus the claim is allowed.[6] Section 506(d) does not avoid liens securing allowed claims. Therefore, we conclude that Wrenn is not entitled to avoid ACIPCO's lien even under his interpretation of § 506(d).

 Wrenn's final argument is that § 522(f) avoids ACIPCO's lien. Section 522(f)(1) provides:

[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien....

11 U.S.C. § 522(f) (1988). Section 522(b) operates with Alabama Code § 6–10–2 to provide debtors in Alabama a $5,000 homestead exemption. The bankruptcy court below avoided ACIPCO's lien to the extent of the $5,000 Alabama homestead exemption.[7] However, Wrenn contends that § 522(f) permits him to go further and avoid the entire lien.

Wrenn's argument is very similar to that of the debtors in *In re Chabot,* 992 F.2d 891 (9th Cir.1993). The Chabots had borrowed $165,000 from City National Bank (CNB) on a demand note. *Id.* at 892. CNB later obtained a $212,000 judgment against the Chabots and recorded the judgment, thus obtaining a judicial lien on the Chabots' house. *Id.* The Chabots filed a petition under Chapter 7, and the debt was discharged. *Id.* After the discharge, CNB sought to levy on the Chabots' house. *Id.* Under California law, the Chabots were entitled to only a $45,000 homestead exemption. *Id.* They contended, however, that CNB's judicial lien "impaired" their homestead exemption beyond the $45,000 by denying them a fresh start, and that the lien was therefore avoidable under § 522(f). *Id.*

The Ninth Circuit rejected the Chabots' argument. It reasoned that the plain meaning of the language of § 522(f) limits its lien avoidance to the value of the exemptions provided in § 522(b). *Id.* at 895. Furthermore, it concluded that applying the plain meaning of the statute gave any postdischarge appreciation to the lienholder, and that this result was consistent with the holding of *Dewsnup. Id.* The court therefore refused to avoid CNB's lien.

We agree with and adopt the *Chabot* court's reasoning. Applying it to Wrenn's case, we conclude that § 522(f) entitles Wrenn to avoid ACIPCO's lien only to the

---

6. We express no opinion as to whether ACIPCO's claim should have been disallowed had Wrenn so moved.

7. ACIPCO does not contest this result.

extent of the $5,000 Alabama homestead exemption.

### IV. Conclusion

Because no provision of the Bankruptcy Code avoids ACIPCO's valid judgment lien on the Homestead, we REVERSE the district court's order and REINSTATE the bankruptcy court order avoiding the lien only to the extent of Wrenn's $5,000 homestead exemption under Alabama law.

REVERSED.