In re Clifford G. BORING, Plaintiff,

v.

PROMISTAR BANK, Defendant.

Promistar Bank, Appellant.

Civ. A. No. 03–203J.

United States District Court,
W.D. Pennsylvania.

Aug. 5, 2004.

David Abrams, Abrams & Mazer, Monroeville, PA, for Appellant.

James C. Warmbrodt, Pittsburgh, PA, for Appellee.

### MEMORANDUM OPINION and ORDER OF COURT

GIBSON, District Judge.

This matter comes before this Court on the appeal of Promistar Bank ("Bank"), the Appellant, succeeded in interest by First National Bank of Pennsylvania. The bankruptcy judge assigned to this case ruled in favor of Clifford Boring ("Debtor"), the Appellee, on his Debtor's Complaint to Determine Secured Status Pursuant to 11 U.S.C. § 506, distinguishing the Supreme Court case of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) from the case *sub judice* to find that judgment liens[1] are subject to avoidance in the absence of equity in the encumbered property in question. The Court reverses this finding of the bankruptcy court.

The bankruptcy judge made the following findings of fact: 1) Debtor resides at 202 Marbury Avenue, Johnstown, Pennsylvania; 2) Debtor purchased this property in September, 1994, for the sum of $31,900; 3) Debtor now avers that the current fair market value of his real property is $49,000; 4) The property is subject to a first mortgage in favor of National City Mortgage in the amount of $31,042.81; 5) The property is subject to a second mortgage in favor of Conseco Finance in the amount of $23,000; 6) Bank caused to have entered a judgment against Debtor in the Court of Common Pleas of Cambria County, Pennsylvania, on October 19, 2001, in the amount of $5,178.47; 7) Bank caused to have entered a second judgment against Debtor in the Court of Common Pleas of Cambria County, Pennsylvania, on October 19, 2001, in the amount of $4,905.35; 8) Debtor filed a Chapter 7 bankruptcy petition on November 8, 2002; 9) Debtor filed his Complaint to Determine Secured Status Pursuant to 11 U.S.C. § 506 on January 9, 2003; 10) Bank filed its Answer to Complaint to Determine Secured Status on January 28, 2003; 11) Both parties agree that the combined balances owed on the first and second mortgages against Debtor's property exceed the value of that property.

■ The district court exercises plenary review of the bankruptcy court's legal determinations while the bankruptcy court's factual findings are reviewable for clear error. *In re Continental Airlines*, 125 F.3d 120, 128 (3rd Cir.1997). The Court finds no clear error in the factual findings of the Bankruptcy Court in the case *sub judice*.

■ This case brings before this Court the legal issue of whether the decision of

---

**1.** The bankruptcy judge made clear that his ruling was not applicable to consensual liens to which he acknowledged *Dewsnup* clearly applies.

the Supreme Court in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), prevents the "stripping off"[2] of an allowed, non-consensual lien by a Chapter Seven debtor pursuant to 11 U.S.C. § 506 where the underlying claim is secured in the ordinary sense under state law in that it is backed up by a security interest in the property, but the value of the property is insufficient to cover the claim.[3]

*Dewsnup* concerned the "stripping down" of a consensual lien upon the real estate of a Chapter Seven debtor. The Supreme Court analyzed the issue of whether the words "allowed secured claim" in § 506(d) have the same meaning as those same words in § 506(a). The pertinent parts of 11 U.S.C. § 506 read as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

* * *

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

These subsections contain the language which is at issue in the case *sub judice*. The Supreme Court, in analyzing this language in *Dewsnup*, determined the following:

In the alternative, respondents, joined by the United States as amicus curiae, argue more broadly that the words "allowed secured claim" in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision. Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured. Because there is no question that the claim at issue here has been "allowed" pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have not been allowed and secured. This reading of § 506(d), according to respondents and the United States,

**2.** This language is bankruptcy law parlance for the ability to completely avoid the payment of a debt versus "stripping down" which refers to the avoidance of only an unsecured portion of a loan.

**3.** In this situation where the value of the property is insufficient to cover the claim,

bankruptcy courts will sometimes describe the lien as "unsecured." However, that description can be somewhat misleading in that under state law a security interest continues to exist in the property until foreclosure, whether or not there is sufficient value in the secured property to cover the claim.

gives the provision the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed. It ensures that the Code's determination not to allow the underlying claim against the debtor personally is given full effect by preventing its assertion against the debtor's property.

\* \* \*

We conclude that respondents' alternative position, espoused also by the United States, although not without its difficulty, generally is the better of the several approaches. Therefore, we hold that § 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

*Dewsnup v. Timm*, 502 U.S. 410, 415–417, 112 S.Ct. 773, 777–778, 116 L.Ed.2d 903, 910–911 (1992)(footnote omitted).

In subsequent cases, various circuit and district courts have used the *Dewsnup* analysis to support or prohibit the extension of the "stripping off" of consensual liens. In the case of *In re Talbert*, 344 F.3d 555 (6th Cir.2003) the Sixth Circuit Court of Appeals concluded that, in a Chapter Seven case, a junior mortgage could not be "stripped off" even though the first mortgage was undersecured. Judge Siler wrote:

> The Supreme Court's reasoning for not permitting "strip downs" in the

Chapter 7 context applies with equal validity to a debtor's attempt to effectuate a Chapter 7 "strip off."

\* \* \*

Also, as in the case of a "strip down," a "strip off" would rob the mortgagee of the bargain it struck with the mortgagor, i.e., that the consensual lien would remain with the property until foreclosure. In fact, in *Dewsnup*, the Court was persuaded by the creditors' argument that " 'the fresh start' policy cannot justify an impairment of respondents' property rights, for the fresh start does not extend to an *in rem* claim against property but is limited to a discharge of personal liability." 502 U.S. at 416, 112 S.Ct. 773. Finally, as was true in the context of "strip downs," Chapter 7 "strip offs" also carry the risk of a "windfall" to the debtors should the value of the encumbered property increase by the time of the foreclosure sale. As one court observed, "[w]ho knows what the real estate market will be tomorrow? By the time of sale in the future, a piece of real estate may have increased in value to cover a second-mortgage lien not covered by the property's value today." *In re Cater*, 240 B.R. [420] at 424 [(M.D.Ala.1999)].

In the instant case, the Talberts do not challenge that City Mortgage's claim is allowed pursuant to § 502. Also, regardless of the fact that the current value of the real property is insufficient to recover City Mortgage's junior lien, the claim is nonetheless "secured in the ordinary sense, that is, ... [it] is backed up by a security interest in property, whether or not the value of the property suffices to cover the claim." *Cater*, 240 B.R. at 422. As *Dewsnup* teaches, that is all that is required; the Talberts may not utilize § 506(a) and (d) to "strip off"

City Mortgage's lien. *See Dewsnup*, 502 U.S. at 415, 112 S.Ct. 773 ("Because there is no question that the claim at issue here has been 'allowed' pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have not been allowed and secured.") (emphasis removed); *see also Cater*, 240 B.R. at 423 ("[B]ecause [the creditor's] claim is allowed under § 502 and is secured by a valid lien, the same result obtains. The fact that the value of the property is insufficient to cover the debt does not warrant a different result."). "Section 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor." *Ryan* 253 F.3d at 783 (quoting *Laskin*, 222 B.R. at 876). When a debtor proceeds under Chapter 7, creditors are "entitled to their lien position until foreclosure or other permissible final disposition is had." *Id.* Thus, we conclude that a Chapter 7 debtor may not use 11 U.S.C. § 506 to "strip off" an allowed junior lien where the senior lien exceeds the fair market value of the real property.

*In re Talbert*, 344 F.3d at 560–562 (footnote omitted).

The decision of the Sixth Circuit in *Talbert* agreed with and relied heavily upon the case of *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir.2001). In *Ryan*, a husband and wife filed a joint, voluntary Chapter Seven petition with an estate that included their residence that was subject to two deeds of trust. The first deed of trust was undersecured leaving the second deed of trust unsecured[4], although the underlying claim was allowed. The

debtors requested the court to declare the second deed of trust void pursuant to 11 U.S.C. § 506, subsections (a) and (d). Relying upon *Dewsnup*, the Fourth Circuit concluded: "Following the Supreme Court's teachings in *Dewsnup*, as we must, we discern no principled distinction to be made between the case *sub judice* and that decided in *Dewsnup*. The Court's reasoning in *Dewsnup* is equally relevant and convincing in a case like ours where a debtor attempts to strip off, rather than merely strip down, an approved but unsecured lien." *Ryan* at 782. The Bankruptcy Appellate Panel for the Ninth Circuit in *In re Laskin*, 222 B.R. 872 (9th Cir. BAP 1998) also agreed with this conclusion in finding that 11 U.S.C. § 506 was not intended to create another avoidance power for Chapter Seven debtors, but rather, in accordance with *Dewsnup*, is to be used to void a lien which is based upon an underlying claim that has not been allowed. Therefore, the court found that the stripping off of a consensual lien is not permitted "absent a trustee's disposition of the putative collateral." *Laskin*, at 876. According to our research, no other circuit courts have addressed this issue.

While *Talbert, Ryan* and *Laskin* concern the stripping off of consensual liens, the issue of stripping off non-consensual liens (such as the judgment lien in the case *sub judice* ) was analyzed by one of our fellow courts within the Third Circuit. Judge Fitzgerald, in the case of *In re Swiatek*, 231 B.R. 26 (Bankr.Del.1999), discusses the extension of the *Dewsnup* analysis to those cases involving non-consensual liens:

> *In re Wrenn*, 40 F.3d 1162 (11th Cir. 1994), held that a chapter 7 judgment creditor's claim was an allowed secured claim post-discharge for purposes of

4.   See fn. 3.

§ 506 where the debtor had not objected to the claim. In *Wrenn* the debtor argued that the lien was void because the discharge of the underlying claim was, in effect, a disallowance of that claim and, therefore, the claim was not "allowed" for § 506 purposes. The court rejected that argument because nothing in the Bankruptcy Code provides that a discharge of a "judgment automatically disallowed a claim based on that judgment." In *In re Howard*, 184 B.R. 644 (Bankr.E.D.N.Y.1995), the court held that a nonconsensual judicial lien which was entirely unsecured could be stripped down pursuant to § 506(d). A judgment creditor has not bargained for its position, in the view of the *Howard* court. The court noted that there was no equity to which the lien could attach and the creditor did not stand a reasonable chance of recovering from any sale of the property. The court's decision was based on its conclusion that *Dewsnup* was limited to the facts with which the Supreme Court was faced, and those facts dealt only with a consensual lien.

The court in *In re Howard*, 184 B.R. 644 (Bankr.E.D.N.Y.1995), noted its disagreement with *In re Mershman*, 158 B.R. 698 (Bankr.N.D.Ohio 1993), [FN4] where debtors filed a motion to avoid a judgment lien under § 522(f) and moved to avoid the judgment lien pursuant to § 506. The court in *Mershman* rejected the view that nonconsensual liens could be stripped down and concluded that lien avoidance depends on whether the lien itself is allowed or disallowed under § 502 and whether it is secured or unsecured. 158 B.R. at 703. The court noted that § 502(a) provides that "a claim is allowed unless a party in interest objects." *Id.* at 703. The court found that judicial liens are "allowable under Section 502(a)", *id.*, and, therefore, the lien at issue was an allowable claim. [FN5]

As noted above, in the case at bench, Debtors have been discharged and the record before us does not show that there was an objection to the Defendant's claim before the discharge. Accordingly, pursuant to § 502, the claim has been allowed and is an allowed claim for purposes of § 506. Section 506 speaks to the creditor's interest in the estate's interest in Debtors' property. Since the case has been closed, the estate no longer has an interest in Debtors' property.

FN4. *In re Gonzalez*, 149 B.R. 9 (Bankr.D.Mass.1993), vacated 191 B.R. 2 (D.Mass.1996). *Gonzalez* primarily involved a § 522(f) issue and § 506 was mentioned in the context of the meaning of the word "impairs" with respect to § 522(f) lien avoidance. Accordingly, *Gonzalez* is not on point.

FN5. A claim is a right to payment. 11 U.S.C. § 101(5). A debt is a liability on a claim. § 101(12). A lien is a "charge against or interest in property to secure payment of a debt." § 101(37).

*Mershman* is consistent with *Dewsnup*. *Dewsnup* concerned a consensual lien and not a judgment lien, but the Supreme Court's examination of the history of liens under the Bankruptcy Code and its conclusion based on that examination is not so limited. The Court was very clear in stating that if the claim has been allowed, the lien is not avoidable. The Court cited *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991), for the proposition that a bankruptcy discharge extinguishes only one mode of enforcing a claim, i.e., an action against the debtor *in personam*, while leaving intact an action against the property *in rem*. The *in rem* aspect of a judgment is equally

as viable in the context of a non-consensual lien as in that of a consensual one. *Dewsnup*, 502 U.S. at 418, 112 S.Ct. at 778. Although in *Dewsnup* the claim was undersecured, not totally unsecured, we think the same result obtains under the *Dewsnup* rationale when the claim is completely unsecured in a chapter 7 and no objection to the claim has been filed and sustained. The Supreme Court has decided that the increase over the judicially determined valuation of the property inures to the benefit of the mortgagee, not the debtor. *Dewsnup*, 502 U.S. at 417, 112 S.Ct. at 778. We can discern little reason why the same principle does not apply to nonconsensual lienors.

*In re Swiatek*, 231 B.R. 26, 29–30 (Bankr. Del.1999). Prior to the ruling in *Swiatek*, the Bankruptcy Court for the Northern District of Ohio in *Mershman*, as cited above, followed this reasoning and cited to similar findings by other bankruptcy courts:

> Under Section 506(a), a lien that is secured by the collateral is not voidable. Conversely, the portion of the lien that is not secured by the Debtors' interest in the collateral is voidable. Therefore, lien avoidance under Section 506(a) and (d) is based upon whether a lien is allowable under Section 502(a), and if so, whether the allowable lien is secured or undersecured. The fact that a lien is or is not consensual is not, in and of itself, relevant in determining the avoidability issue. The true question in the instant case is whether the provisions of 11 U.S.C. 506 are available to Chapter 7 Debtors.
>
> The Supreme Court, in *Dewsnup, supra*, concluded that § 506(d) could not be used by a Chapter 7 debtor to strip down a lien that has been allowed under § 502. *Dewsnup* at 779[, 112 S.Ct. 773].

The *Dewsnup* Court reasoned that Congress did not intend to depart from the pre-code rule which holds that liens pass through bankruptcy unaffected. *Id.* Citizens, in its motion, cites several Courts which have, subsequent to *Dewsnup*, held that Section 506(d) may not be used by Chapter 7 debtors to strip judicial liens. *See, In re Bursee*, 142 Bankr.[B.R.] 167, 1992 Bankr.LEXIS 1075 (Bankr.N.D.Ohio 1992); *In re Prestegaard*, 139 Bankr.[B.R.] 117 (Bankr. S.D.N.Y.1992); *In re D'Amelio*, [142 B.R. 8,] 1992 WL 155841 (Bankr. D.Mass.1992); *In re Gonzalez*, [149 B.R. 9,] 1993 WL 6378 (Bankr.D.Mass.1993); *In re Saturley*, 149 Bankr.[B.R.] 245 (Bkrtcy.D.Me.1993). These Courts have refused to avoid liens irrespective of whether the judicial liens impaired an exemption, or had any present value. Where an exemption appeared to be impaired, these courts simply voided the lien to the extent of the impairment. If the liens had no present value, the courts determined that the liens effectiveness was a question of priority. In other words, the creditor's status was not greater than it otherwise would be in any foreclosure. This Court is persuaded by these arguments.

*In re Mershman*, 158 B.R. 698, 703–704 (Bankr.N.D.Ohio 1993). Within our own district, Judge Bentz, writing for the bankruptcy court in a brief opinion dismissing a petition of Chapter Seven debtors that requested the stripping down and stripping off, respectively, of a first and second mortgage wrote:

> While expressing no view on the issue, the Court of Appeals for the Third Circuit also notes "that courts are split on whether *Dewsnup's* rejection of lien stripping in Chapter 7 applies to a wholly unsecured lien." *In re McDonald*, 205 F.3d [606] at 614–15 [(3d Cir.2000)]. We will follow those cases which find

that *Dewsnup* is applicable and that completely underwater liens cannot be stripped off.

*In re Keltz*, 261 B.R. 845, 846 (Bankr. W.D.Pa.2001). As Judge Bentz recognized, the Third Circuit has not addressed the issue of whether an allowed non-consensual lien may be stripped off.

The bankruptcy judge who wrote for the bankruptcy court in the case *sub judice* found that the Appellant's allowed, non-consensual liens can be "stripped off" where there is no equity in the debtor's property to which the lien attached to cover the underlying claim. Specifically, the bankruptcy judge analyzed the issue in terms of the underlying theory upon which the *Dewsnup* opinion was based:

> The stated intent of the majority of justices in *Dewsnup* was to preserve the pre-Code status of liens, unless Congress clearly indicated otherwise in future legislation. Before *Dewsnup*, a judgment lien on property in which the debtor held no equity could be avoided under 11 U.S.C. § 506 (a, d). Judgment liens do not hold the same status in bankruptcy as consensual liens, as the *Dewsnup* court implicitly recognized. There is no bargained-for agreement between the debtor and creditor as there is in a consensual lien, and so the creditor's position is much weaker. In theory, the holder of a consensual lien can modify the interest rate charged or take other measures to protect his investment. The debtor had agreed to these terms and understands that the property will be subject to foreclosure if he does not fulfill his side of the bargain. Historically, this arrangement developed because Congress wanted to foster the home mortgage industry by providing assurance that home mortgages would not be dissolved in bankruptcy.

> In contrast, the creditor holding a judgment lien has no agreement with the debtor and has turned to the courts to enforce his claim. This judgment creditor has no guarantee that property will be available to secure his interest or that any existing property of the debtor will have sufficient equity unencumbered by superior liens. The key difference is that the consensual creditor's position is determined at the time the loan is made and with the concurrence of the debtor, while the non-consensual lien-holder's position is determined after the fact of the incurrence of a claim. Thus, while the judgment creditor's claim may be valid, the lien itself is subject to avoidance if there is no equity in the debtor's property to which the lien may attach.

> Consequently, we find for the Debtor that the judgment liens held by Bank [Appellant] are subject to avoidance under 11 U.S.C. § 506.

Opinion of Bankruptcy Judge, August 6, 2003, (Document # 21) pp. 6–7. The Court disagrees with the bankruptcy judge's analysis and conclusion that pursuant to the guidance provided by *Dewsnup* consensual and non-consensual liens should be treated differently under § 506(d).

■ This Court adopts the opposite position espoused in *Keltz, Mershman* and *Swiatek* that the Bank's judgment liens are not void under § 506(d). This is consistent with the Supreme Court's finding in *Dewsnup* that Congress intended that liens pass unaffected through the bankruptcy proceedings; no differentiation between consensual and non-consensual liens was articulated by the Supreme Court in *Dewsnup*. It appears from the record that the Appellant's two judgment liens were allowed and no dispute exists as to that conclusion; in fact, that issue does not appear to have been briefed. The Court finds that the allowed judicial liens are not

subject to avoidance under § 506 and shall remain with the property until the time of foreclosure or other permissible disposition. The value of the liens in the case *sub judice* is a question of priority established under state law; the Supreme Court in *Dewsnup* recognized that the status of "secured" as defined in § 506(a) is without any significance to the definition of "allowed secured claim" under § 506(d). *Dewsnup,* 502 U.S. at 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903, 911 (1992). This reasoning is also consistent with the Supreme Court's concern, voiced in *Dewsnup,* that the debtor not reap a "windfall" after an increase in value of the property from the time of the judicial valuation of the property. *Id.* This "windfall" issue is just as much a concern in apparently unsecured loans as undersecured loans and could mean the difference between no recovery and some recovery by an allowed judicial lien creditor after the foreclosure and sale of the property. Also, as stated previously, this Court finds no basis in *Dewsnup* upon which to determine that consensual and non-consensual liens should be treated differently under § 506(d). Finally, § 506 was not intended to create another avoidance power for the Chapter Seven debtor. *See Ryan* and *Laskin, supra.*

Therefore, the Court finds that an allowed, judicial (non-consensual) lien may not be voided under 11 U.S.C. § 506(d) even where it appears that there is no equity in the debtor's property to which the lien is attached with which to cover the underlying claim. The judgment of the bankruptcy court is *reversed.*

**AND NOW** this 5th day of August, 2004, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED that the judgment of the bankruptcy court is REVERSED and the request of Clifford G. Boring to void the two allowed, non-consensual, judicial liens totaling $5,178.47 and $4,905.35, respectively, is DENIED.