**In re Ronald Lewis TODD, and Shirley Ann Todd, Debtors.**

No. 95–32131–7.

United States Bankruptcy Court, D. Montana.

April 12, 1996.

Jon R. Binney, Milodragovich, Dale, Steinbrenner & Binney, P.C., Missoula, Montana, for Debtors.

Michael L. Hayes, Recht & Recht, P.C., Hamilton, Montana, for creditor Pioneer Liquidating Corporation.

## ORDER

JOHN L. PETERSON, Chief Judge.

At Butte in said District this 12th day of April, 1996.

After due notice hearing was held in this Chapter 7 bankruptcy, on a Motion to Avoid Lien on real property filed by Debtors Ronald Lewis Todd and Shirley Ann Todd ("Debtors") January 29, 1996. The affected creditor, Pioneer Liquidating Corporation ("Pioneer"), filed an objection to the motion on March 4, 1996. At hearing both parties appeared represented by counsel. Debtors presented the testimony of Debtor Ronald Lewis Todd ("Todd") and introduced into

evidence Exhibits 1–11 without objection. Upon close of the hearing, the parties asked that the record be left open for subsequent filing of the deposition of another of Debtors' witnesses, Shirley Dowling ("Dowling"), a real estate broker. The Court gave the parties 15 days to submit the deposition, and an additional 5 days to submit simultaneous memoranda in support of their respective positions. The deposition and briefs having now been timely filed, the matter stands ripe for adjudication. Upon review of the record, Debtors' motion is denied in part and granted in part.

Debtors argue the real property in question has a "quick sale value" of $250,000. They further allege that using a "straight mathematical formula" under 11 U.S.C. § 522(f), the Court should find Pioneer's lien impairs Debtors' homestead exemption completely and therefore the lien must be avoided. In the alternative, Debtors request the Court to avoid so much of Pioneer's lien as impairs Debtors' exemption.

Pioneer points out that it filed its lien subsequent to Debtors' filing of their homestead exemption, and argues therefore that its lien does not impair Debtors' homestead exemption. Citing the Ninth Circuit case of *City National Bank v. Chabot (In re Chabot)*, 992 F.2d 891 (9th Cir.1993), Pioneer further argues that this means its subsequent lien cannot be avoided under 11 U.S.C. § 522(f). Pioneer also avers the same result obtains under these facts pursuant to the Montana statutes. Finally, Pioneer maintains, even if a hypothetical debtor may avoid a lien in a § 522(f) action like the one at bar, Debtors have failed in the instant case to establish, under § 522(a)(2), a fair market value for the property in question sufficiently certain to apply the statute and avoid the lien.

## I.

The following facts the Court finds undisputed:

Debtors purchased the home in question for $215,000 in October of 1992. (Exhibit 1). The unfinished house and grounds required substantial sums of money to complete, and by all accounts the improvements increased the value of the property significantly. In April of 1994, Debtors listed the residence for sale, asking $379,000. The market expressed little interest in this price, and Debtors lowered the asking price several times.

Finally, in September of 1995, Debtors received an offer of $275,000 from potential buyers, John R. Baldwin and Betty V. Baldwin. (Dowling Depo., p. 14, 11, 16–18). The Baldwins accepted Debtors counter-offer of $290,000. (Exhibit 9). The sale, however, was contingent on the Baldwin's daughter's family purchasing a house next-door. *Id.* When this failed to occur, Debtors unilaterally lowered the price to $270,000 in an effort to induce the Baldwins to nevertheless close the sale. When Pioneer refused to relinquish its lien on the property, the sale failed to close.

Debtors filed a Montana declaration of homestead exemption October 10, 1994. (Exhibit 8). Pioneer subsequently recorded a judgment lien of $50,000 plus interest and costs on March 17, 1995. Debtors filed the instant Chapter 7 Petition on December 12, 1995.

The factual issue in dispute between the parties centers on the proper valuation of the property. Debtors contend the Court should find the fair market value as a "quick sale value" of between $240,000 and $250,000. Debtors base this figure on the testimony of Todd and Dowling. This view is also supported by the lengthy time the property sat on the market at higher prices, and by the fact that Debtors and the Baldwins could not close a sale at the price of $270,000.

On the other hand, Pioneer maintains the Court should value the property at $290,000 at the very least, because Debtors had earlier reached a buy-sell agreement with the Baldwins at that price. Pioneer also contends that Todd and Dowling lacked the competence to express opinions on the value of the property because neither has received training or had experience in valuing land. Moreover, Pioneer argues that even if the two have competence to express an opinion on the matter, the Court should discount the weight of those opinions because of Todd's interest in the litigation, and Dowling's

equivocation when pressed for details or assurances about price estimates. Pioneer's view is undermined, however, by the fact that the $290,000 price agreed to was tied to some unique conditions in the contract, and the fact that Pioneer never offered any evidence whatsoever as to its value claims.

Notwithstanding the ambiguity of certain of the evidence so far set forth, the Court first focuses on two salient facts in determining the value of Debtors' home. First, the Baldwins opened negotiations on purchase of the property at $275,000. Thus they were willing at that time to pay at least that much for clear title to the residence, provided their children could buy the home next door. Second, in an effort to close a sale Todd testified to fearing would likely otherwise fall apart, Debtors dropped their asking price to $270,-000 when the Baldwin's daughter and son-in-law lost the house next-door. Thus sellers and buyers had made actual offers placing the value of the home between $270,000 and $275,000.

Even more important, the parties reached an agreement at $270,000. The Baldwins intended to and would have paid this much for clear title. (See Dowling Depo., p. 19, 11, 1–18). Only when Pioneer declined to relinquish its lien did the Baldwins back out. *Id.* The Court finds that if Pioneer had surrendered its lien on the property, the Baldwins would have purchased the home at $270,000, even with the home next door sold to someone other than their children. Thus, actual sellers and buyers of the home had reached an actual, non-hypothetical agreement on its value at $270,000.

## II.

■ Debtors base the instant motion to avoid lien on 11 U.S.C. § 522(f),[1] and they bear the burden of proof on all avoidance issues. *See, e.g., In re Streeper,* 158 B.R. 783, 786 (Bankr.N.D.Iowa 1993).

### A.

■ We begin the market value analysis with 11 U.S.C. § 506(a) which provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Section 506(a) provides that a claim is secured only to the extent of the value of the property on which the lien is fixed while the remainder of the claim is considered unsecured. *Id.; United States v. Ron Pair Enterprises,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290, 297 (1989). The method of valuation varies among the courts because the statutory language of § 506(a) is drafted broadly.

The legislative intent behind § 506(a) is equally unclear. The House Report indicates

---

1. 11 U.S.C. § 522(f) provides in pertinent part:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt—

\*  \*  \*  \*  \*  \*

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

that valuation does not "necessarily contemplate forced sale or liquidation value of the collateral, nor does it always imply a full going concern value" but is determined on a "case-by-case basis, taking into account the facts of each case and the competing interests in the case." H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 356, reprinted in 5 U.S.Code Cong. & Admin.News at 5787, 6312 (1978). Similarly, the Senate Report indicates that "while courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property." S.Rep. No. 95–989, 95th Cong., 2d Sess. 68, reprinted in 5 U.S.Code Cong. & Admin.News at 5854 (1978).[2]

Consequently, courts are divided between using a valuation approach of what a creditor could recover in a commercially reasonable manner and the debtor's intends proposed use of the collateral. Courts adopting the "commercially reasonable manner" approach emphasize the "creditor's interest in the estate property" in the beginning portion of § 506(a). *See, e.g., In re Boring,* 91 B.R. 791, 795 (Bankr.S.D.Ohio 1988); *In re Paige,* 13 B.R. 713, 714–15 (Bankr.S.D.Ohio 1981). Courts adopting the debtor's "intended use approach" emphasize the latter portion of § 506(a)—"in light of the purpose of the valuation and proposed disposition of use of such property"—to support their statutory interpretation. *See, e.g., In re Spacek,* 112 B.R. 162, 163 (Bankr.W.D.Tex.1990) (using intended use rule when debtor retained collateral); *In re Foster,* 79 B.R. 906, 908 (Bankr.D.Mont.1987); *In re Courtright,* 57 B.R. 495, 497 (Bankr.D.Or.1986) (using interest of creditor approach would make "in light of purpose" portion of § 506(a) mere surplusage).

▪ As the broad language of § 506(a) and its legislative history indicate, valuation is a judicial factual determination made on a case-by-case basis.

▪ In assessing the value of a home under 11 U.S.C. § 522(a)(2), " 'value' means fair market value as of the date of the filing of the petition." *BFP v. Resolution Trust Corp.,* —— U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). At least one court has adopted the view that § 522 "fair market value" in the Chapter 7 context means "liquidation value." *In re Walsh,* 5 B.R. 239, 241 (Bankr.D.C.1980). This decision has received strong and well reasoned criticism, however, and this Court declines to follow its holding. *In re Mitchell,* 103 B.R. 819, 821–822 (Bankr.W.D.Tex.1989).

> The overwhelming weight of the case law which has addressed the definition of fair market value rejects the notion that the appropriate valuation is what the debtor would receive in a hypothetical liquidation and has held instead that value should be measured by the amount the debtor would receive from a reasonable and willing buyer if the debtor were not under compulsion to sell. (Citing numerous cases).

*Windfelder v. Rosen (In re Windfelder),* 82 B.R. 367, 372 (Bankr.E.D.Pa.1988). *See also In re Foster, supra* at 908 as to the definition of fair market value (willing buyer-willing seller definition). This Court finds analysis employed in *Mitchell Windfelder* and *Foster* sound, and concludes that "value" under 11 U.S.C. § 522(a)(2) means the price a willing seller and a willing buyer under no compulsion would agree upon after a reasonable period of exposure to the market, where the buyer is knowledgeable of all uses and purposes for which the property is adopted and for which it was or is capable of such use.

### B.

As to § 522(f) analysis, the Court has recently held that "Congress' amendments to § 522(f) by the Bankruptcy Reform Act of 1994, P.L. 103–394," legislatively reversed the holding of *In re Chabot,* 992 F.2d 891 (9th Cir.1993),[3] and "determine the result of

---

**2.** The Supreme Court's interpretation of § 506(a) merely borrows Congress' broad definition *United States v. Timbers of Inwood Forest,* 484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740, 749 (1988) (defining "creditor's interest" under § 506(a) as "value of collateral").

**3.** In *Chabot,* the equity in the debtor's home was $400,000. There were prior liens on the property totaling at least $125,000 and the state homestead exemption was $45,000. The debtor sought to avoid a subsequent judgment lien on the home of $240,000, which the court found

the pending motion," *In re Moe,* 14 Mont. B.R. 210, 211 (Bankr.Mont.1995). The Court elaborated thus:

> Unlike *Chabot,* using the new mathematical formula of § 522(f)(2)(A), a judgment lien will impair a debtor's homestead exemption to the extent the sum of that judgment lien, other avoidable liens, if any, and the applicable exemption exceed the value of the debtor's interest in the property. This new amendment applies to cases filed after October 22, 1994.

> \* \* \* \* \* \*

The holding of *Chabot* which is now overruled is—

> Under the plain meaning of the statute, then, an exemption is not impaired unless its amount is diminished in value. CNB's lien has no impact on the Chabot's ability to recover their $45,000 homestead exemption. Therefore, it is not impaired and cannot be avoided. (Citations omitted).

*Id.* at 211, 212.

This Court then held under "the new legislative formula of § 522(f)(2)(A)," that to the extent the sum of a judgment lien plus any other avoidable liens plus the amount of homestead exemption a debtor can claim exceeds the value of the debtor's interest in the property—or what the debtor would have in the absence of the judgment lien—the judgment lien is avoidable under § 522(f). *Id.* at 213. The Ninth Circuit BAP has reached an identical conclusion, albeit in dicta. *Jones v. Heskett (In re Jones),* 180 B.R. 575, 577 n. 2 (9th Cir. BAP 1995).

In a footnote, without acknowledging the analysis employed by this Court in *Moe,* Pioneer argues the 1994 Amendments do not disturb the ruling of *Chabot,* averring the conclusions of *Jones* and *Moe* "render[ ] subsection (f)(1) largely superfluous." Pioneer relies on the U.S. Supreme Court opinion of *Owen v. Owen,* 500 U.S. 305, 309–310, 111 S.Ct. 1833, 1835–1836, 114 L.Ed.2d 350 (1991), arguing the only liens that are avoidable under § 522, are those to which a debtor

"would have been entitled" absent the lien. *Owen,* however, does not preclude avoidance of liens that impair actual exemptions, rather it applies lien avoidance to liens that prevent a debtor from even qualifying for an exemption. *See, also, Wachovia Bank & Trust Co. v. Opperman (In re Opperman),* 943 F.2d 441 (4th Cir.1991); *Snow v. Green (In re Snow),* 899 F.2d 337 (4th Cir.1990); Lawrence P. King, *Collier on Bankruptcy,* ¶ 522.29 (1995). The Court thus finds Pioneer's argument without merit and reaffirms its holding in *Moe.*

### III.

■ Applying the foregoing principles to the facts at bar, the Court determines the value of Debtors' residence at the time of petition at $270,000, the price voluntarily agreed upon by Debtors and the Baldwins after the property had been exposed to the market for some 17 months.

■ Debtors filed this case after October 22, 1994, so "the new mathematical formula of § 522(f)(2)(A)" applies. As of October 16, 1995, First Interstate Bank held a trust indenture on the property with pay-off of $180,958.24, and an approximate per diem accumulation of $50.87. (Exhibits 3, 4 and 11). This would have left a total pay-off 49 days later, as of the petition date of December 6, 1995, at $183,450.87 (180,958.24 + 2,492.63). Creative Finance held a trust indenture with a pay-off of $11,294.80 on October 16, 1995, with interest accumulating at about $3.54 per day. (Exhibits 6, 7 and 11). This would have left the petition date pay-off at $11,468.26 (11,294.80 + 173.16). The total of these two mortgage interests equals $194,919.13 as of the petition date. Debtors' equity interest in the property absent the judgment lien equals the fair market value of the property on the date of the petition ($270,000) less mortgages ($194,919.13), or $75,080.87. Using the new formula of § 522(f), the sum of the judgment lien ($50,000), another lien ($1,676.31) (Exhibit 11), and the amount of the Debtors' allowable homestead exemption ($40,000), totals $91,676.31, and

---

attached to the debtor's equity in the home. The court held since the homestead exemption would not be diminished, i.e., it would be paid before

the CNB judgment, the exemption was not impaired, and thus could not be avoided under § 522(f). *Chabot,* 992 F.2d at 894–95.

therefore exceeds the value of the Debtors' interest in the property by $16,595.44 ($91,-676.31 less $75,080.87), or what the Debtors would have in the absence of the judgment lien by $33,404.56. Therefore, Pioneer's judgment lien is avoidable under § 522(f) to the extent of $16,595.44 and is not avoidable to the extent of $33,404.56.[4] The secured claim of Pioneer is thus fixed at $33,404.56.

IT IS ORDERED the motion of Debtors Ronald Lewis Todd and Shirley Ann Todd to avoid judgment lien of Pioneer Liquidating Corporation dated January 29, 1996, is granted in part and denied in part; Pioneer's lien is avoided to the extent of $16,595.44; and Pioneer's judgment lien is allowed as a secured claim in the sum of $33,404.56, with the balance as a general, unsecured claim.

---

**4.** The same result obtains using the formula employed by the court in *In re Brantz,* 106 B.R. 62, 68 (Bankr.E.D.Pa.1989) (citing *In re Magosin,* 75 B.R. 545, 547 (Bankr.E.D.Pa.1987)), which is cited in the legislative history of the 1994 amendment to § 522(f). *Moe,* at 212.

1. Debtors' interest in property $ 75,080.87
2. Less liens not to be avoided ( 1,676.31)
3. Less homestead exemption ( 40,000.00)
$ 33,404.56

The positive result (3) is the extent to which the lien may not be avoided under the formula.