**In re Randy KERBS, and Jill Kerbs, Debtor(s).**

**Bankruptcy No. 96–42222–13.**

United States Bankruptcy Court, D. Montana.

April 2, 1997.

---

Kraig C. Kazda, Hartelius, Ferguson, Baker & Kazda, P.C., Great Falls, MT, for Debtor.

Terrence M. Healow, Alexander, Baucus, Taleff & Paul, P.C., Great Falls, MT, for A.S. Kautz and James H. Wilkins.

Robert G. Drummond, Great Falls, MT, Chapter 13 Trustee.

## ORDER

JOHN L. PETERSON, Chief Judge.

In this Chapter 13 bankruptcy, after due notice, hearing was held March 20 1997, at Great Falls on the Motion to Avoid Liens of Paramount Lists, Inc. ("Paramount"), and Terrence M. Healow, Trustee for the Estate of James Brummer filed by Debtors on February 21, 1997. Debtors appeared through counsel. Terrence M. Healow appeared in person as counsel for the successors to the judgment lien of the Brummer estate, A.S. Kautz and James H. Wilkins (referred to hereinafter as "the Brummer successors"), as did the Chapter 13 Trustee. Debtors introduced the testimony of appraiser Barb Thomas, and Debtor Jill Kerbs ("Kerbs"). Exhibits 1–5 were admitted into evidence without objection. Upon close of the hearing, the Court granted the parties five days to submit simultaneous memoranda arguing in support of their respective positions. Such filings having been timely made, the matter stands ripe for adjudication.

The motion seeks to avoid judicial liens on certain residential real property upon which Debtors have filed a homestead exemption. Debtors argue the real property has a fair market value of either its replacement cost of $219,212.00, or its estimated comparable sales value of $210,000.00. Debtors claim, therefore, under the mathematical formula laid out in *In re Moe*, 199 B.R. 737 (Bankr. Mont.1995), that the $61,009.14 in judgment liens held by Paramount Lists Inc. ($28,-378.79), and the Brummer successors ($32,-630.35) are subject to avoidance under 11 U.S.C. § 522(f)(1). The Brummer successors counter by asserting that Debtors have failed in their burden of proof on the value of the real property, and in the value of the liens here in question. Furthermore, the Brummer successors invoke the equitable remedy of marshaling, and request the Court to require the senior lienholders to subtract the value of other property that secure their claims from the amount of their liens on the instant real property. Upon review of the record, the Court finds for Debtors.

## I.

Debtors presented the testimony of a licensed appraiser, Barb Thomas ("Thomas"), whose competence the Brummer successors do not question. Thomas opined that the Kerbs home has a fair market value of $210,-000, based on a sales comparison analysis method of appraisal. Exhibit 1, dated October 18, 1996, sets forth Thomas' formal written appraisal. The appraisal includes entries for the actual sales prices of four comparable properties used in arriving at Thomas' estimate of fair market value. Thomas testified that she reinspected the home and the market shortly before hearing and found no basis to change her estimate. The Brummer successors' provided no witness or independent testimony disputing Thomas' valuation of the home. Given this lack of controversy in the record, the Court determines that Debtors' home had a fair market value of $210,000 as of the instant petition date, October 18, 1996.

Debtors filed a homestead exemption on the residence on November 16, 1995, prepetition. (Exhibit 2.) A Deed of Trust was recorded in favor of First Interstate Bank of Montana, N.A., (now Wells Fargo Bank) on May 19, 1992, encumbering Debtors' home for an amount of $130,000.00. (Exhibit 3). Another was recorded in favor of Heritage Bank on February 24, 1995, for an unspecified amount on a line of credit up to $80,000.

(Exhibit 4.) Finally, a Montana Trust Indenture was recorded June 11, 1996, securing repayment of $15,000 in favor of Heritage Bank on a credit card agreement. (Exhibit 5.) Kerbs related that as of the filing date Debtors owed $126,194.51, on First Interstate Bank/Wells Fargo Bank obligation and $78,211.81 on the two Heritage Bank obligations.

On cross-examination, however, Kerbs admitted that Heritage Bank held liens on two of their vehicles in addition to their house. While Kerbs disputed the resale value of a 1988 Corvette, Debtors value the car at $22,000 in their signed Schedules and have not produced an independent appraisal as to its value. Based on this record, the Court sets the value of the Corvette at $22,000. Heritage Bank also has a lien on Debtors' van, valued in their Schedules at $17,000, which the Court adopts as its value for purposes of Debtors' instant motion.

## II.

On motions to avoid lien pursuant to 11 U.S.C. § 522(f), moving parties bear the burden of proof on all avoidance issues. *In re Todd*, 194 B.R. 893, 895 (Bankr.Mont. 1996); *see, e.g., In re Streeper*, 158 B.R. 783, 786 (Bankr.N.D.Iowa 1993). Moreover, "to the extent the sum of a judgment lien plus any other avoidable liens plus the amount of homestead exemption a debtor can claim exceeds the value of the debtor's interest in the property—or what the debtor would have in the absence of the judgment lien—the judgment lien is avoidable under § 522(f)." *Todd*, 194 B.R. at 897.

The valuation of such interests. must occur as of the petition date. As the 9th Circuit Court of Appeals has reasoned:

Our holding is consistent with the recent Supreme Court case *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Although the Court was considering section 506(d) of the Bankruptcy Code, the issue before the Court was lien avoidance. The Court in *Dewsnup*

reasoned that "[t]he practical effect of petitioner's argument is to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property.... The increase would accrue to the benefit of the debtor." *Id.* 502 U.S. at 417, 112 S.Ct. at 778. The Court disagreed with such a result and noted that the lien stays with the property until foreclosure. *Id.* The Court declared that "[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor...." *Id.*

This circuit spoke to the issue of who receives the benefit of post-petition appreciation in *In re Hyman*, 967 F.2d 1316 (9th Cir.1992). Although the issue was not central to the decision, the court said, "[w]ere we to accept the [debtors'] argument that they're entitled to post-filing appreciation, we would also have to hold that a debtor is subject to post-filing *depreciation*." *Id.* at 1321. Clearly the Bankruptcy Code does not envision such fluctuations in the value of an exemption. Debtors are entitled to the set amount of the exemption, no more and no less. If debtors wish to realize any appreciation, they can sell the property, receive the exempt amount from the proceeds, and invest it as they see fit.

*City National Bank v. Chabot (In re Chabot)*, 992 F.2d 891, 895–896 (9th Cir.1993) (while this Court has held that the Bankruptcy Reform Act of 1994 overruled portions of *Chabot*, the above quoted passage remains intact, *see In re Moe*, 199 B.R. 737, 738 (Bankr.Mont.1995)).

In addition, when valuing property for the purposes of § 522(f) courts must look to the petition date and use the "fair market value," which in the residential home context means:

[T]he price a willing seller and a willing buyer under no compulsion would agree upon after a reasonable period of exposure

to the market, where the buyer is knowledgeable of all uses and purposes for which the property is adopted and for which it was or is capable of such use.

*Id.* 194 B.R. at 895–96. The Court further holds that where no sale or contract for sale has been consummated, a comparable sales appraisal, using actual sales prices of similar properties, entails sufficient of the foregoing criteria to adequately determine fair market value. *See, e.g., Coles v. Frye Constr., Inc. (In re Coles)*, 166 B.R. 609 (Bankr.W.D.Pa. 1994).

■ The Brummer successors have plead the equitable doctrine of marshaling. In explaining this doctrine as applied under Montana law,[1] the Court has held:

Marshaling [sic] is an equitable doctrine developed historically and traditionally used to prevent a junior lienholder with a security interest in a single property from being squeezed out by a senior lienholder with a security interest not only in that property, but in one or more additional properties. The doctrine requires the senior lienholder to first resort to assets free of the junior lien to avoid the inequity which would otherwise result from the unnecessary elimination of the junior lienholder's security with the increased likelihood the junior creditor will be unable to satisfy its claim.

*Murdock v. Sec. State Bank of Harlem (In re Murdock)*, 134 B.R. 417, 421 (Bankr.Mont. 1991) (quoting *In re Spectra Prism Indust., Inc.*, 28 B.R. 397, 399 (9th Cir. BAP 1983)).

■ The doctrine does not directly apply to the dispute at bar, however, because resolution does not require, nor even permit, the Court to order the senior lienholder with interests in assets to other than Debtors' home—Heritage Bank—to foreclose on its other collateral. Id. at 182 (quoting *Chitten-*

*den Trust Co. v. Sebert Lumber Co. (In re Vermont Toy Works, Inc.)*, 82 B.R. 258, 290 (Bankr.Vt.1987). The equitable principle, however, does apply. Under this principle, the Court holds that since the senior lienholder has other collateral to satisfy its secured interests in the event of foreclosure, the value of those other assets should, for the purposes of judicial lien avoidance, diminish the total of its consensual lien on a property also encumbered by junior lienholders.

### III.

■ Analyzing the facts *sub judice* in light of the foregoing principles, the Court concludes first that Debtors have sustained their burden of proof in establishing the fair market value of their home at $210,000. The comparables in Thomas' written appraisal share similar characteristics with Debtors home, and sold on the open market near in time to the date of the appraisal. To the extent that dissimilarities do exist between Debtors' home and the compared sales, the appraiser made specific adjustments to account for such discrepancies. Furthermore, no competing expert appraisal or other sale exists in the record to compete with Thomas' evaluation. Thus, the Brummer successors have failed to undermine Thomas' opinion.

Second, for purposes of *Moe/Todd* lien avoidance formula, the Court must use the petition date values of the liens in question. Debtors have sustained their burden as to these values as well. The Brummer successors contend that since Debtors contended in their objection to Paramount Lists, Inc.'s Proof of Claim that they had made certain payments to Paramount, they have failed in sustaining their burden as to the value and precedence of the Paramount lien. Nevertheless, while the Brummer successors speculated as to the existence of a consensual note between Paramount and Debtors subse-

---

1. Mont.Code Ann. § 31–2–105 provides:
   **Relative rights of different creditors.** Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim and another person has an interest in or is entitled as a creditor to resort to some but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction and without doing injustice to third persons.

quent to the judgment, no evidence of such was ever presented. Moreover, Debtors previously withdrew their objection to Paramount's Proof of Claim, and therefore can no longer be said to hold the positions asserted therein. Moreover, the existence of payments in satisfaction of a judgment does not alone imply the existence of a separate subsuming note. Finally, the Court can draw no implications with regard to these assertions from Debtor Randy Kerbs failure to testify. In short, Debtors have met their prima facie showing with regard to the values of the liens, consensual and judgment, against their home, and the Brummer successors offered no evidence to dispute this showing.

■ Finally, turning to the lien avoidance calculation, the Court first determines that the values of Heritage Bank's other collateral securing its claims against Debtors' (the two vehicles) must reduce the value of Heritage Bank's lien in the *Moe/Todd* formula.[2] As to the *Moe/Todd* calculation, the value of the judgment liens equals $61,009.14.[3] Adding Debtors' $40,000 homestead exemption to this sum yields $101,009.14. Debtor's petition date interest in the property equals its fair market value less the consensual liens of Wells Fargo and Heritage Bank offset by the value of Heritage Bank's other collateral equals $44,593.68.[4] Thus, the judgment liens against Debtors property are avoidable under § 522(f) to the extent of $56,415.46.[5]

Nevertheless, from this record, the Court cannot determine the priority of the two

judgment liens. Paramount has a judgment lien for $28,378.79, the Brummer successors have one for $32,630.35. Debtors' motion, however, simply requests the Court to avoid the liens to the extent allowed by law. No record or appearances were made with regard to any matter putting lien priority at issue. Consequently, the seniority of the two judgment liens is not before the Court, and, therefore, it must refrain from ruling on such. Accordingly,

IT IS ORDERED:

1. The Motion to Avoid Liens of Paramount Lists, Inc, and Terrence M. Healow, Trustee for the Estate of James Brummer filed, 1997, by Debtors is granted in part and denied in part; and

2. The judgment liens of the successors in interest of the Brummer Chapter 11 bankruptcy estate, A.S. Kautz and James H. Wilkins, and of Paramount Lists Inc are hereby avoided to the extent of $56,415.46.

---

**2.** The Courts' use of this offset does not constitute a marshaling order, and has no binding effect on Heritage Bank's rights to foreclose on Debtors' home. Should a dispute over marshaling later arise between Heritage Bank and junior creditors, a separate proceeding would be re-

quired with Heritage Bank joined as a party. *See Murdock,* 134 B.R. at 420.

**3.** $28,378.79 (Paramount) + 32,630.35 (Brummer successors).

**4.**

Fair market value of home ($210,000) −

{Wells Fargo lien ($126,194.51) +

[Heritage Bank lien ($78,211.81) −

value of vehicles (39,000) ] }            = $210,000 − 165,406.32

= $44,593.68

**5.** ($101,009.14 − 44,593.68).